732 A.2d 1167

COMMONWEALTH of Pennsylvania, Appellee,

v.

Roy L. WILLIAMS, Appellant.

Supreme Court of Pennsylvania.

Submitted July 21, 1998.

Decided June 4, 1999.

214

216

Robert Brett Dunham, Philadelphia, for R. Williams.

Catherine Marshall, Philadelphia, Robert A. Graci, Harrisburg, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

SAYLOR, Justice.

This is an appeal from an order of the Court of Common Pleas of Philadelphia County denying post-conviction relief in this capital case. We affirm in part, and remand for limited further proceedings.

On January 27, 1988, shortly after telling companions that, for no apparent reason, he would kill the first white man that he saw, Appellant Roy L. Williams ("Williams") shot and killed James McDonnell, a caucasian male who was a stranger to him. Williams then fled to Massachusetts, where he committed another criminal homicide and other violent crimes prior to being captured and returned to Philadelphia for trial on charges of first degree murder and related offenses pertaining to the killing of Mr. McDonnell.

At trial, as part of its case-in-chief, the Commonwealth offered the testimony of Michael Easley, Holly Boone and Paula Bowens, each of whom testified that he or she was with Williams on the eve of the killing, heard him state one or more times that he intended to kill a white man, and witnessed Williams' commission of the murder. Williams presented testimony from two witnesses in an attempt to suggest that the killer was someone other than himself. The jury issued verdicts of guilt on all counts.

During the penalty phase, the Commonwealth introduced evidence of Williams' Massachusetts conviction for the out-of-state homicide, an assault and battery and a robbery convic-

tion related to a separate criminal episode in Massachusetts, together with evidence of three Pennsylvania robbery convictions, to establish the aggravating circumstance of a significant history of felony convictions involving use or threat of violence. *See* 42 Pa.C.S. § 9711(d)(9). Williams offered the testimony of his mother to establish mitigating circumstances. The jury returned a sentence of death. On direct appeal, this Court affirmed. *See Commonwealth v. Williams*, 541 Pa. 85, 660 A.2d 1316 (1995), *cert. denied*, 516 U.S. 1051, 116 S.Ct. 717, 133 L.Ed.2d 671 (1996).

On August 7, 1996, represented by new, post-conviction counsel, Williams filed a 103–page "Petition for Habeas Corpus Relief Under Article I, Section 14 of the Pennsylvania Constitution and for Post–Conviction Relief Under the Post Conviction Relief Act and Consolidated Memorandum of Law."[1] The petition was divided into articles stating sixteen separate principal "grounds for relief," each of which contained multiple claims of legal error. Briefly stated, these asserted grounds include allegations that: the Commonwealth withheld relevant impeachment evidence in connection with the testimony of eyewitness Michael Easley; the Commonwealth presented false testimony from eyewitness Holly Boone; the trial court erroneously failed to issue a "corrupt and polluted source" jury instruction in connection with Easley's testimony; the trial court erroneously failed to issue a jury instruction concerning second degree murder; the jury was death qualified but not life qualified; the evidence in support of the aggravating circumstance of Section 9711(d)(9), 42 Pa.C.S., was illegally obtained; the district attorney misrepresented Williams' record of convictions in connection with

1. The 1995 amendment to Section 9545(b) of the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546 (the "PCRA"), generally requires that a PCRA petition be filed within one year of the date upon which a petitioner's judgment of sentence becomes final. *See* 42 Pa.C.S. § 9545(b). An exception exists, however, for cases such as this one, in which the judgment of sentence became final prior to the amendment's effective date. *See* Section 3(1) of Act 1995 (Spec.Sess. No. 1), Nov. 17, P.L. 1118, No. 32. In such cases, the petition must be filed within one year after the effective date. Williams' petition, filed in August, 1996, meets this requirement and, accordingly, was timely.

his argument concerning the (d)(9) aggravator; the (d)(9) aggravator is unconstitutionally vague; the district attorney made inappropriate "un-narrowing" statements to the jury concerning the (d)(9) aggravator; Williams was entitled to a "life-means-life" jury instruction; the trial court imposed an unduly and unconstitutionally heavy burden of proof for mitigating circumstances; trial counsel was ineffective in the penalty phase for failing to present a sufficient case of mitigation; trial counsel was ineffective in the guilt phase for failing to develop a diminished capacity defense; and Williams is entitled to relief by virtue of the cumulative effect of the above alleged errors and ineffectiveness. In addition, Williams asserted blanket claims that his trial and appellate counsel, Richard E. Johnson, was ineffective for failing to raise the above issues in post-trial motions and on direct appeal, and that comprehensive post-conviction review is otherwise appropriate pursuant to the relaxed waiver doctrine applied by this Court in death penalty cases. In support of the petition, Williams filed thirteen unsworn declarations, the bulk of which were directed toward establishing mitigating evidence, as well as records of Williams' mental health treatment. Also among the declarations was a recantation from Ms. Boone of her inculpatory trial testimony.

Williams then filed a motion for summary relief pursuant to Pa.R.Crim.P. 1507(b), and the Commonwealth filed its own motion to dismiss under Pa.R.Crim.P. 1509(b). Without a hearing, but after oral argument, the PCRA court announced its intention to grant the Commonwealth's motion to dismiss and issued the appropriate notice pursuant to Rule 1509(b).

After the PCRA court issued this notice, Williams filed a supplement to his post-conviction petition, seeking to add a seventeenth ground for relief. In this claim, Williams alleged that, during the process of jury selection, the Commonwealth utilized its peremptory challenges in a racially discriminatory manner, thus violating Williams' rights under the federal and state constitutions. Williams also alleged that his trial counsel was ineffective for having failed to preserve this issue at trial and raise it on direct appeal.

The PCRA court subsequently issued a three-page opinion restating the procedural history of the case and, without further explanation, stating as follows:

> We are unusually impressed and satisfied that the arguments advanced by the Commonwealth, in its brief in support of its Motion to Dismiss, accurately set forth the facts and the law that govern this case.

> Therefore, in the interest of judicial economy and rather than needlessly expend precious judicial time that can be better spent on other pending matters, this Court hereby adopts the Brief submitted by the District Attorney and makes same a part hereof.

In this appeal, in addition to the seventeen grounds for relief presented to the PCRA court, Williams also argues that: it was error for Mr. Justice Castille to participate in the Court's decision on direct appeal; the PCRA court erred in denying requested discovery to Williams in the post-conviction proceeding and in failing to require the Commonwealth to produce exculpatory materials pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); the PCRA court erred in failing to conduct an evidentiary hearing on Williams' post-conviction claims; and the PCRA court erred in adopting the Commonwealth's arguments in denying post-conviction relief. Additionally, Williams filed a separate motion in connection with this appeal seeking the recusal of Mr. Justice Castille, which was denied by Justice Castille's order dated June 29, 1998.

## I. *Claims Raised For the First Time in this Appeal*

### A. *Participation of Mr. Justice Castille*

In contending that his appellate counsel was ineffective for failing to seek recusal of Mr. Justice Castille during direct review, Williams emphasizes that Justice Castille formerly was the District Attorney of Philadelphia, serving in that capacity when Williams was charged with the murder of Mr. McDonnell. In support of his contention that Justice Castille's participation in the direct appeal was therefore inappropriate,

Williams cites to Canon 3 of the Code of Judicial Conduct and the right to an impartial tribunal pursuant to the due process clause of the Fourteenth Amendment to the United States Constitution.

Canon 3, however, creates no right of recusal on behalf of litigants, but merely prescribes standards by which judges should exercise their discretion in ruling upon questions of recusal. *See Goodheart v. Casey*, 523 Pa. 188, 198, 565 A.2d 757, 762 (1989). The ultimate decision is vested within the sound discretion of the jurist whose recusal is sought. *See Commonwealth v. O'Shea*, 523 Pa. 384, 407, 567 A.2d 1023, 1034 (1989), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990). Moreover, Williams' request for the recusal of a jurist who did not personally litigate the criminal case against him, and, indeed, left his position as the District Attorney over one year prior to the trial in this case, plainly lacks a constitutional dimension. *See generally Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821, 106 S.Ct. 1580, 1585, 89 L.Ed.2d 823 (1986)(stating that "[c]ertainly only in the most extreme cases would disqualification on [the basis of bias or prejudice] be constitutionally required"); *Federal Trade Comm'n v. Cement Inst.*, 333 U.S. 683, 702, 68 S.Ct. 793, 804, 92 L.Ed. 1010 (1948)(stating that "[m]ost matters relating to judicial disqualification [do] not rise to a constitutional level").

As previously noted, Williams' PCRA counsel filed a motion to recuse Justice Castille from consideration of the post-conviction appeal, and Justice Castille, in an appropriate exercise of his discretion, declined to forego participation in the case for the reasons that he previously had articulated in *Commonwealth v. Jones*, 541 Pa. 351, 663 A.2d 142 (1995). Such reasons apply equally to the direct review of Williams' conviction and sentence; thus, it is quite apparent that Mr. Justice Castille also would not have recused himself at that stage of the proceedings had he been asked. Counsel cannot be deemed ineffective for failing to pursue a meritless claim. *See generally Commonwealth v. Watley*, 548 Pa. 574, 580, 699

A.2d 1240, 1242 (1997). Therefore, this attack upon the adequacy of trial counsel's stewardship fails.[2]

## B. *Denial of discovery in the PCRA proceedings*

Williams also seeks appellate review of the PCRA court's decision to deny his requests for general discovery and for production of exculpatory materials pursuant to *Brady v. Maryland* in the post-conviction proceedings. With respect to the discovery request, Williams points to Pa.R.Crim.P. 1502(e)(2) as the controlling authority. Rule 1502(e)(2) provides that, on the first counseled petition in a death penalty case, "no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of good cause."[3] The statement of cause set forth in Williams' appellate brief is limited to the general claim that the requested materials are necessary to the full and fair preparation and litigation of his claims. The discovery request that was submitted to the PCRA court was a degree more specific. Williams sought production of a complete copy of all discovery materials previously provided to trial and appellate counsel, unredacted (but unidentified) police reports, and the last known addresses and telephone numbers of all material witnesses.

In *Commonwealth v. Abu–Jamal*, 553 Pa. 485, 720 A.2d 79 (1998), this Court recently considered an appellant's claim that a PCRA court inappropriately denied a similar request for broad discovery. The appellant contended generally that production of the entire Commonwealth file related to his prosecution was necessary to the preparation of his post-conviction case. *See id.* at 510, 720 A.2d at 91 (noting that the

---

**2.** Williams also cites to a number of federal decisions construing Section 455 of the federal Judicial Code, 28 U.S.C. § 455. Such authorities, however, are not relevant to Pennsylvania jurisprudence, as Section 455 applies, by its terms, to "[a]ny justice, judge, or magistrate *of the United States* . . . . " *Id.* (emphasis added).

**3.** Pa.R.Crim.P. 1502(e)(2) was added in 1997 and, therefore, would not be directly applicable to Williams' PCRA proceeding, which was filed in August, 1996. The Commonwealth, however, appears to agree to the appropriateness of a "good cause" analysis; therefore, we will proceed upon this agreed basis.

"[a]ppellant essentially requested wholesale discovery of whatever information he 'believed' to exist and/or of entire files so that he could discern whether his assertions were true"). In affirming the denial of the discovery request, this Court made clear that both the overbreadth of the request and the lack of specificity associated with the accompanying statement of necessity supported the PCRA court's decision. *See id.* at 510–12 & n. 15, 720 A.2d at 91 & n. 15.

Here, like the appellant in *Abu–Jamal,* Williams has failed to establish any specific ground that would warrant his broad-based discovery request. The general claim of necessity contained in his appellate brief is plainly insufficient, and, given the unavailability of relief based upon undeveloped claims for which insufficient arguments are presented on appeal, *see generally Commonwealth v. LaCava,* 542 Pa. 160, 188–89, 666 A.2d 221, 235 (1995), we need look no further. Moreover, Williams has provided no explanation as to why documents that were provided to his former counsel by the Commonwealth were not available to his post-conviction counsel. Nor did he attempt to identify specific documents that were not produced during the pre-trial proceedings or at trial.[4] Under such circumstances, it is clear that the PCRA court did not abuse its discretion in denying his request for discovery.[5]

Nor would *Brady v. Maryland* have required the PCRA court to enter a specific order directing the production of exculpatory documents from the Commonwealth. While

4. While his discovery request made reference to several police reports claimed to have been inappropriately redacted, Williams made no effort to specifically identify those documents or to explain their alleged materiality to the post-conviction proceedings.

5. Appellate courts generally review the grant or denial of discovery requests for an abuse of discretion. *See generally Commonwealth v. Rucci,* 543 Pa. 261, 283, 670 A.2d 1129, 1140 (1996), *cert. denied,* 520 U.S. 1121, 117 S.Ct. 1257, 137 L.Ed.2d 337 (1997). The Rule of Criminal Procedure applicable to post-conviction proceedings, Pa. R.Crim.P. 1502, unlike its counterpart applicable to pre-trial proceedings, Pa.R.Crim.P. 305(B)(2), does not expressly commit the grant or denial of post-conviction discovery to the trial court's discretion. The provisions of Rule 1502, however, are intended to direct the PCRA court's discretion, not to alter the character of its decision.

the Commonwealth's obligations under *Brady* continue through all stages of the judicial process, *see Pennsylvania v. Ritchie,* 480 U.S. 39, 59, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987), the Commonwealth is, in the first instance, the judge of what information must be disclosed. "Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance." *Ritchie,* 480 U.S. at 59, 107 S.Ct. at 1002; *see also Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977)(stating that "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one"). *See generally Commonwealth v. Copenhefer,* 553 Pa. 285, 319, 719 A.2d 242, 259 (1998)(stating that it is the petitioner's burden to "prove, by reference to the record, that evidence was withheld or suppressed by the prosecution")(citing *Rucci,* 543 Pa. at 282, 670 A.2d at 1140).

█ Here, presumably the Commonwealth has complied with its obligations under *Brady,* as Williams failed to make some plausible showing to the contrary. Accordingly, no relief is due.

## C. *The PCRA court's opinion*

Williams next complains about the PCRA court's decision to incorporate the Commonwealth's brief to supply the reasons for dismissal of his petition. In this regard, Williams cites to several decisions of federal and state courts that have disapproved of this practice.

█ We recognize the finite resources available to trial courts, and this Court has not prohibited the adoption of portions of a party's arguments in support of a judicial disposition. Certainly Pa.R.A.P. No.1925(a) provides a degree of flexibility in this regard, permitting trial judges, where appropriate, to specify places in the record where reasons may be found for their decisions. We cannot, however, in this post-conviction case involving a review of the propriety of a death

sentence, condone the wholesale adoption by the post-conviction court of an advocate's brief. This is particularly so where it is alleged that the advocate, here the government, withheld material discovery at trial, suborned false testimony from an eyewitness, and engaged in a pattern of racial discrimination in the process of jury selection. Regardless of the validity of such allegations, the independent role of the judiciary cannot properly be served in this case absent some autonomous judicial expression of the reasons for dismissal.

For this reason alone, a remand is warranted. In the interest of judicial economy, however, we will review the grounds for relief asserted to identify issues that will require additional consideration on the part of the PCRA court and to provide the required independent judicial determination for issues that have been properly disposed.

## II. *Claims Raised Before the PCRA Court*

This Court's review of the denial of post-conviction relief is limited to an examination of whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error. *See Commonwealth v. Morales,* 549 Pa. 400, 408, 701 A.2d 516, 520 (1997)(citing *Commonwealth v. Travaglia,* 541 Pa. 108, 117 n. 4, 661 A.2d 352, 356 n. 4 (1995), *cert. denied,* 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996)). Generally, claims of trial error are not cognizable under the PCRA where such claims previously have been waived. *See* 42 Pa.C.S. §§ 9543(a)(3), 9544(b). Waiver is applied in the post-conviction setting where the petitioner could have raised an issue of trial error but failed to do so prior to trial, at trial, on appeal or in a prior post-conviction proceeding. 42 Pa.C.S. § 9544(b).

While prior versions of the PCRA expressly provided for excuse of waiver in circumstances where the alleged error resulted in the conviction or affirmance of sentence of an innocent individual or where the waiver does not constitute a state procedural default barring federal habeas corpus relief, *see* 42 Pa.C.S. § 9543(a)(3)(ii), (iii)(repealed), the General As-

sembly eliminated those express provisions in the November 17, 1995, amendments.[6] Additionally, this Court has announced that, to effectuate the terms of the PCRA and in keeping with principles of fairness, finality and efficient judicial administration, review under the relaxed waiver doctrine is no longer available in PCRA cases. *See Commonwealth v. Albrecht*, 554 Pa. 31, 44–46, 720 A.2d 693, 700 (1998). Therefore, post-conviction relief is not available to the extent that Williams has asserted general claims of trial error that were not preserved at trial and raised on direct appeal.

Nevertheless, the substantive provisions of the PCRA contemplate relief in those circumstances in which a petitioner pleads and proves by a preponderance of the evidence that his conviction or sentence resulted from "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). Here, because Williams' trial counsel also served as his appellate counsel, this is his first opportunity to raise his allegations of ineffectiveness. *See Commonwealth v. Griffin*, 537 Pa. 447, 454, 644 A.2d 1167, 1170 (Pa.1994)(noting that a claim of ineffectiveness must be raised at the earliest possible stage in which the allegedly ineffective counsel no longer represents the petitioner). Therefore,

**6.** Pennsylvania appellate courts have cited former Section 9543(a)(3)(iii) as a statutory source of authority permitting consideration of claims of ineffectiveness, even where one or more post-verdict substitutions of counsel have occurred, if the petitioner also asserts the ineffectiveness of all prior counsel. *See generally Commonwealth v. Eaddy*, 419 Pa.Super. 48, 55–56, 614 A.2d 1203, 1207 (1992), *appeal denied*, 534 Pa. 636, 626 A.2d 1155 (1993). This Court has not specifically addressed the effect of the repeal of Section 9543(a)(3)(iii), if any, upon the justiciability under the PCRA of waived claims through the assertion of such "layered" claims of ineffectiveness. As noted below, however, where a petitioner's trial and appellate counsel are the same, counsel would not generally be permitted to claim his own ineffectiveness in post-verdict or direct appeal proceedings. *See generally Commonwealth v. Green*, 551 Pa. 88, 93, 709 A.2d 382, 384 (1998). Therefore, where there is no intervening substitution of counsel, there is no waiver of claims of ineffective assistance of trial counsel by virtue of the failure to raise them on direct appeal.

Williams' claims will be afforded review to the extent that they are framed in terms of the ineffectiveness of his prior counsel.

 In order to prevail on claims of ineffective assistance of counsel made in the post-conviction context, a petitioner is required to establish by a preponderance of the evidence that: each of his claims has arguable merit; trial counsel had no reasonable basis for proceeding as he did; and the alleged ineffectiveness of counsel so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *See* 42 Pa.C.S. § 9543(a)(2)(ii); *see generally Commonwealth v. Kimball,* 555 Pa. 299, 313, 724 A.2d 326, 333 (1999).[7] Moreover, the law presumes, in the first instance, that a petitioner's trial counsel was effective. *Copenhefer,* 553 Pa. at 301, 719 A.2d at 250.

## A. *The trial testimony of eyewitness Michael Easley*

The first set of Williams' substantive "grounds for relief" concerns the trial testimony of prosecution witness Michael Easley. While conceding that the Commonwealth preemptively elicited testimony from Easley concerning his prior robbery conviction and open drug charges against him, Williams asserts that the district attorney purposely withheld material details concerning Easley's criminal history and, indeed, permitted and encouraged Easley to make material misrepresentations to the jury concerning his record. Williams contends that the actual chronology of Easley's criminal background, combined with the fact that he did not implicate Williams until over one year after the crime, establishes persuasive evidence of bias. In particular, Williams focuses upon the fact that Easley had been charged with robbery and several other offenses on January 4, 1989, two months prior to giving his statement, and that those offenses were dismissed without prejudice within several months after he gave the statement. Moreover, Williams contends that the district attorney violat-

---

7. In *Kimball,* this Court held that the last of these elements, the PCRA's prejudice requirement, although framed in different terms, is equivalent to the prejudice standard employed in adjudicating a claim of ineffectiveness on direct appeal. *Id.* at 313, 724 A.2d at 332–33.

ed the dictates of *Brady v. Maryland* when he failed to turn over Easley's criminal history to trial counsel until immediately prior to Easley's testimony, and even then supplied trial counsel with only an incomplete extract. According to Williams, trial counsel facilitated these alleged improprieties and rendered ineffective assistance by failing to undertake an independent investigation of Easley's criminal background and by failing to adequately prepare for his cross-examination. Williams further asserts that the trial court erred when it refused to grant a request made by trial counsel for a continuance to prepare for his examination of Easley. According to Williams, his contentions in this regard are grounded in fundamental due process and the right of a criminal defendant to confront witnesses.

The specific passage from Easley's testimony about which Williams complains proceeded as follows:

Q. . . . Do you have a record sir?

A. Yes.

Q. What have you been convicted of?

A. Robbery.

Q. Now, were you convicted of this robbery and charged with the robbery before you gave the police this statement?

A. Yeah.

Q. Did you tell the police the statement and then get charged with robbery, or what?

A. No, I told the statement first.

Q. Then later on you got charged with robbery?

A. Yes.

Q. Did you go to jail for that?

A. Yes, I did.

\* \* \*

Q. The last two or three weeks have you been charged with something else?

A. Yes.

Q. Is that a drug charge?

A. Yes.

Q. Is that pending now?

A. Yes.

Q. Has the Commonwealth of Pennsylvania, or any district attorney, including myself made any kind of deals with you to testify?

A. No, they didn't.

Q. Had you agreed to testify before you ever got arrested on those charges?

A. Yes, I did.

Williams argues that this exchange falsely suggested that Easley was not under the threat of *any* robbery charges at the time that he gave his initial statement implicating Williams, when charges had, in fact, been pending against Easley related to an earlier robbery. The Commonwealth vigorously argues, and the PCRA court found, that the examination was directed only to establishing that Williams was not subject to the robbery charges *for which he was ultimately convicted* at the time he gave his statement.

While Easley's testimony is capable of both interpretations given by the parties, Williams' direct claims of trial error associated with this testimony are waived, as they were not raised on direct appeal. The same is true for his claim that *Brady v. Maryland* was violated in connection with the production of an excerpt from Easley's criminal record, his complaint regarding the timing of that disclosure, and his assertion that the trial court erred by failing to grant a continuance for his trial counsel to prepare to cross-examine Easley. We thus turn to examine Williams' collateral attack upon trial counsel's stewardship.

On cross-examination, trial counsel made reference to the fact of Easley's criminal history, including his conviction for the *crimen falsi* offense of robbery and his exposure to open drug charges. In closing arguments, trial counsel suggested to the jurors that Easley's testimony may have been fabricated to obtain favorable treatment in his own criminal case or for other reasons. Trial counsel also emphasized the fact that

Easley had not disclosed his knowledge concerning the murder of Mr. McDonnell to police until over one year after the killing.

■■■■ Trial counsel could (and probably should) have attempted further to impeach Easley's testimony by reference to the fact that criminal charges were pending against him at the time that he gave his initial statement to police implicating Williams, and the fact that such charges were later dismissed.[8] However, given the efforts that trial counsel did make in his attempt to impeach Easley's testimony, Easley's general denial of having entered into any agreement with the Commonwealth to obtain favorable treatment, and the inculpatory eyewitness testimony that is unchallenged in this post-conviction proceeding, Williams cannot establish that any failing on his counsel's part so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *See Commonwealth v. Moore,* 534 Pa. 527, 552–57, 633 A.2d 1119, 1131–34 (1993)(declining to find counsel ineffective for failing to obtain impeachment evidence which would not have altered the verdict), *cert. denied,* 513 U.S. 1114, 115 S.Ct. 908, 130 L.Ed.2d 790 (1995).

■■■■ Where, as here, a petitioner fails to prove prejudice, a claim of ineffective assistance of counsel may be rejected upon that basis alone. *See generally Commonwealth v. Paolello,* 542 Pa. 47, 76, 665 A.2d 439, 454 (1995). Accordingly, the PCRA court properly dismissed this claim.

## B. *The recantation declaration of eyewitness Holly Boone*

Williams' second ground for relief is premised upon the recantation of eyewitness Holly Boone. In her declaration,

---

**8.** Generally, counsel should bring to the attention of the factfinder the existence of non-final charges against a Commonwealth witness for the purpose of apprising the factfinder of the witness' possible motives in testifying. *See generally Commonwealth v. Murphy,* 527 Pa. 309, 313, 591 A.2d 278, 280 (1991); *Commonwealth v. Borders,* 522 Pa. 161, 163, 560 A.2d 758, 759 (1989). The pendency of criminal charges at the time Easley gave his initial statement to police implicating Williams would appear to have been similarly relevant to Easley's possible motives at that time.

Ms. Boone asserts that, when she was initially questioned in connection with the killing of Mr. McDonnell, she truthfully told homicide detectives that she knew nothing about the murder. She claims that the detectives subsequently harassed her on a daily basis and, over time, "gave [her] the story piece by piece, without [her] telling them anything." After being shown the written statements of Easley and Paula Bowen, Boone claims to have succumbed and "said what [police] wanted to hear." Boone now claims, contrary to her testimony at Williams' preliminary hearing and trial, that she neither heard Williams say that he was going to kill a white person, nor saw him commit a homicide. Williams contends that Ms. Boone's recantation constitutes after-discovered evidence and forms a basis for relief under the PCRA.

The PCRA court's reasons for declining to hear Ms. Boone's recantation testimony, adopted from the Commonwealth's brief, included the axiom that recantation testimony inherently embodies a diminished degree of reliability. The PCRA court also concluded that Williams is unable to demonstrate prejudice related to Boone's trial testimony, even if false, because the Commonwealth's case included the testimony of two other eyewitnesses, Easley and Bowens, as well as corroborative medical and ballistics evidence.

While this Court has often acknowledged the limitations inherent in recantation testimony, *see, e.g., Commonwealth v. Floyd*, 506 Pa. 85, 94, 484 A.2d 365, 369 (1984)(characterizing recantation testimony as "extremely unreliable"), we have not foreclosed the possibility that, in some instances, such testimony may be believed by the factfinder and thus form a basis for relief. *See generally Commonwealth v. McCracken*, 540 Pa. 541, 659 A.2d 541 (1995)(upholding a grant of relief in the form of a new trial based upon the recantation testimony of a central witness). For this to occur, however, the testimony must be such that it could not have been obtained at the time of trial by reasonable diligence; must not be merely corroborative or cumulative; cannot be directed solely to impeachment; and must be such that it would likely compel a different outcome of the trial. *See*

*generally id.* at 549, 659 A.2d at 545. In addition, "an appellate court may not interfere with the denial or granting of a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion." *Id.* at 549, 659 A.2d at 545 (quoting *Commonwealth v. Coleman,* 438 Pa. 373, 377, 264 A.2d 649, 651 (1970)); *see also* 42 Pa.C.S. § 9543(a)(2)(vi) (providing for post-conviction relief where a conviction is the result of "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced").[9] *See generally Commonwealth v. Wilson,* 538 Pa. 485, 511, 649 A.2d 435, 448 (1994), *cert. denied,* 516 U.S. 850, 116 S.Ct. 145, 133 L.Ed.2d 91 (1995).

Several other jurisdictions have found that, when questions of perjury and the credibility of a central witness' post-trial recantation are raised in support of a claim for post-conviction relief, the post-conviction court may dismiss the claim without an evidentiary hearing when he or she was the judge who presided over the defendant's trial. *See, e.g., People v. Hernandez,* 298 Ill.App.3d 36, 232 Ill.Dec. 283, 697 N.E.2d 1213, 1215 (1998). These jurisdictions would permit the post-conviction court to resolve the questions of fact concerning the reliability of the alleged perjury and recantation by considering the witness' credibility, the trial record, and the affidavits in support of the post-conviction petition. *Id.*

We do not here preclude the possibility that a credibility-based dismissal of a petitioner's claims involving recantation might be appropriate under some set of circumstances without the necessity of an evidentiary hearing. In this case, however, the PCRA court failed to make an independent credibility determination, yet, by the adoption of the Commonwealth's arguments, rested its decision, in part, upon credibility. Moreover, the incorporated segment of the Commonwealth's brief merely recited boilerplate principles concerning

9. Since the PCRA includes this separate substantive provision for relief with respect to after-discovered evidence, Williams need not proceed through the vehicle of ineffective assistance with regard to this claim.

the inherent limitations of recantation testimony—it did not contain any particularized finding as to the actual credibility of Ms. Boone's prospective testimony as reflected in her declaration. Nor is there anything in the Commonwealth's brief which would demonstrate that the PCRA court actually considered Ms. Boone's recantation in light of the trial record of her testimony and her post-trial declaration. The PCRA court's decision, therefore, is tantamount to the *per se* preclusion of post-conviction relief based upon recantation evidence. Since this would be inconsistent with our precedent, we find that the PCRA court abused its discretion not only in failing to make an independent credibility determination, but also in adopting reasons in support of its decision that were insufficient on their face.

The PCRA court also found that Williams could not demonstrate prejudice, because the Commonwealth's case did not rely solely upon the testimony of Ms. Boone. Rather, Michael Easley and Paula Bowens also testified both to having overheard Williams' statements as to his intention to kill and to having witnessed the killing. While this argument would appear to have merit on the cold face of the record, we decline to validate the dismissal of Williams' claim on this ground in the present posture of the case. Rather, to rectify the PCRA court's error related to issues of credibility, and because the PCRA court as factfinder is in a superior position to make the initial assessment of the importance of Ms. Boone's testimony to the outcome of the case, the PCRA court is directed to conduct a hearing, at which Ms. Boone can be heard, to consider the second ground for relief raised in Williams' post-conviction petition. We also direct the PCRA court to render its own, independent findings of fact and conclusions of law concerning Ms. Boone's credibility and the impact, if any, upon the truth-determining process which can be discerned from such testimony.

### C. *Failure to issue "corrupt source" and second degree murder charges*

The third and fourth of Williams' grounds for relief state his claim that the trial court erroneously failed to issue a corrupt

and polluted source charge to the jury in connection with Easley's testimony, as well as an instruction to make second degree murder an available option for the jury in its degree of guilt determination. Williams also argues that trial counsel was ineffective for failing to request such instructions.

With respect to the corrupt source charge, it is well established that, in any case in which an accomplice implicates the defendant, the trial court should instruct the jury that the accomplice is a corrupt and polluted source whose testimony should be considered with caution. *See Commonwealth v. Chmiel*, 536 Pa. 244, 251, 639 A.2d 9, 13 (1994). The charge is indicated in cases in which the evidence is sufficient to present a jury question with respect to whether the Commonwealth's witness is an accomplice. *Id.; see also Commonwealth v. Spence*, 534 Pa. 233, 247–48, 627 A.2d 1176, 1183 (1993). Such a jury question is present when the witness could be indicted for the crime for which the accused is charged. *Commonwealth v. Sisak*, 436 Pa. 262, 268, 259 A.2d 428, 431 (1969). A person may be indicted as an accomplice where the evidence would establish that he "knowingly and voluntarily cooperate[d] with or aids another in the commission of a crime" with the intent to assist the principal. *Id.* at 268 & n. 4, 259 A.2d at 431 & n. 4 (citations omitted). *See generally* 18 Pa.C.S. § 306(c)(1) (setting forth the statutory definition of accomplice).

Here, the PCRA court accepted the Commonwealth's argument that a corrupt source charge was not warranted, because there was no evidence presented at trial from which the jury could reasonably have inferred that Easley was an accomplice. We agree.

The Commonwealth's evidence established that Williams singled out a random victim and killed him for his own personal reasons apparently related to race. There was no evidence of encouragement or assistance from Easley, nor did his mere presence at the crime scene render him an accomplice. *See generally Commonwealth v. Smith*, 480 Pa. 524, 528, 391 A.2d 1009, 1011 (1978). Moreover, although there

was evidence that Williams and Easley had earlier discussed the possibility of committing a robbery, nothing was presented which would in any way link such discussion to the killing, nor was there evidence of any act or event connected with the murder that would suggest that a robbery was intended. These circumstances are markedly different from those present in other cases in which this Court has found the accomplice instruction necessary. *See, e.g., Chmiel,* 536 Pa. at 251, 639 A.2d at 13 (finding a corrupt source instruction required where the evidence revealed an intent on the part of the Commonwealth's chief witness to aid in the commission of a robbery); *Commonwealth v. Bricker,* 525 Pa. 362, 370–75, 581 A.2d 147, 150–53 (1990)(holding that the evidence established that the Commonwealth's chief witness, testifying pursuant to a plea agreement and as a participant in the federal witness protection program, was a co-conspirator to a murder). *See generally Commonwealth v. Derk,* 553 Pa. 325, 719 A.2d 262 (1998)(equally divided Court). Additionally, an accomplice instruction would have contradicted Williams' defense that neither he nor Easley was present at the scene of or involved in any way in the killing. *See generally Commonwealth v. Karabin,* 493 Pa. 249, 252–53, 426 A.2d 91, 93 (1981)(finding trial counsel was not ineffective for failing to request a corrupt source charge in a murder trial, where such instruction could have derogated the defendant's trial theory that he did not perform the killing).

 For the same reason, Williams' assertion that his trial counsel was ineffective for failing to request a jury instruction concerning second degree murder fails. Such instruction is not required where the evidence is insufficient to establish a jury question as to whether the killing occurred during the perpetration of a robbery, or another enumerated felony. *See* 18 Pa.C.S. § 2502(b), (d); *see generally Commonwealth v. Lark,* 548 Pa. 441, 455, 698 A.2d 43, 50 (1997). Thus, in this case, the absence of evidence that a robbery was intended defeats the claim of entitlement to the jury charge. *See id.; Commonwealth v. Williams,* 490 Pa. 187, 190, 415 A.2d 403, 404 (1980).

Since the evidence was insufficient to present a jury question both as to whether Easley was an accomplice and as to whether the murder was committed during the course of a felony, counsel cannot be deemed ineffective for failing to request the inapposite corrupt and polluted source and second degree murder jury instructions. *See generally Watley,* 548 Pa. at 580, 699 A.2d at 1242.

### D. *Failure to life qualify the jury*

Williams' fifth ground for relief is his claim that the trial court improperly permitted the jury to be "death-qualified" by permitting *voir dire* to exclude those jurors who were opposed to the death penalty, while at the same time failing to require all jurors to be "life-qualified" by conducting an examination to determine whether any jurors were partial to the death penalty. Williams claims that such alleged failure resulted in an unacceptable risk that at least one of the jurors would have been unable to properly consider the evidence in aggravation and mitigation in the penalty hearing. According to Williams, his trial counsel was ineffective for failing to determine whether each and every juror could ever impose a life sentence or would impose a death sentence in every first degree murder conviction.

To the extent that Williams' arguments assert error on the part of the trial court, they are waived by the failure to raise them on direct appeal. With respect to Williams' claims calling trial counsel's advocacy into question, counsel cannot be deemed ineffective merely because he did not ask life qualification questions of all jurors in this case. *See generally Commonwealth v. Henry,* 550 Pa. 346, 370, 706 A.2d 313, 324 (1998); *Commonwealth v. Washington,* 549 Pa. 12, 31–32, 700 A.2d 400, 410 (1997), *cert. denied,* — U.S. ——, 118 S.Ct. 2375, 141 L.Ed.2d 742 (1998); *Lark,* 548 Pa. at 450–51, 698 A.2d at 48; *Commonwealth v. Blount,* 538 Pa. 156, 164, 647 A.2d 199, 203–04 (1994). Moreover, the trial court specifically asked the following series of *voir dire* questions, encompassing generally jurors' views as to both death and life qualification:

... Do you have any moral, religious, or conscientious reason against sitting as a juror in this case and passing on the judgment of guilt or not guilt of this Defendant on these charges? ...

\* \* \*

... Would your own views when imposing a death penalty in a case where the Prosecution is seeking the death penalty, will your views either prevent you or substantially impair you in performing duty as a juror in accordance with the instructions on the law as given by the court in your oath as a juror? ...

\* \* \*

The jury is only concerned with sentencing after the guilty or not guilty portion of the trial has been concluded and then only if a defendant has been found guilty of Murder in the First Degree. Should that occur, the Court will instruct you on the law concerning when the sentence may be life imprisonment and when the death penalty may apply. The question is: After you have heard the law, will you be able to follow the Court's instructions in this regard?

During *voir dire*, trial counsel also elaborated upon these questions in a number of instances where follow-up was indicated. Our review of the record of *voir dire* reveals no instance during which trial counsel's conduct fell below the minimum required performance and, thus, no basis for relief.

### E. *Williams' Massachusetts felony conviction as an aggravating factor*

In his sixth ground for relief, Williams contends that he is entitled to relief from the sentence of death, because the sole aggravating circumstance found by the jury was based upon guilty pleas that were unconstitutionally obtained. In the penalty hearing, the jury found present the circumstance set forth at Section 9711(d)(9), 42 Pa.C.S. § 9711(d)(9), establishing a defendant's "significant history of felony convictions involving the use or threat of violence to the person" as an aggravating circumstance in a capital case. In support of this

238

aggravator, the Commonwealth relied upon Williams' multiple Pennsylvania robbery convictions, as well as his Massachusetts convictions predicated upon guilty pleas to assault and battery by means of a dangerous weapon, armed robbery and manslaughter. Williams questions the knowing and voluntary nature of these guilty pleas in light of his assertion that his Massachusetts counsel failed to advise him that the convictions could be used to establish an aggravating circumstance in the Pennsylvania capital case.

 On direct appeal in this case, Williams challenged the admissibility of his Massachusetts convictions in the penalty hearing, albeit for different reasons,[10] and this Court concluded that those convictions were properly before the jury. *See Williams*, 541 Pa. at 97–98, 660 A.2d at 1322–23. A petitioner is precluded from raising a claim on post-conviction review that was previously and finally litigated on direct appeal. *See* 42 Pa.C.S. §§ 9543(a)(3), 9544(a)(2), (a)(3); *see generally Commonwealth v. Banks*, 540 Pa. 143, 148, 656 A.2d 467, 469, *cert. denied*, 516 U.S. 835, 116 S.Ct. 113, 133 L.Ed.2d 65 (1995) (stating that an issue is previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue"). Further, a petitioner may not obtain relief on collateral review merely by alleging ineffective assistance of counsel and presenting claims that were previously litigated under new theories. *See* 42 Pa.C.S. §§ 9543(a)(3), 9544; *Whitney*, 550 Pa. at 629, 708 A.2d at 476; *Henry*, 550 Pa. at 359, 706 A.2d at 319; *Beasley*, 544 Pa. at 565, 678 A.2d at 778; *Commonwealth v. Peterkin*, 538 Pa. 455, 460–61, 649 A.2d 121, 123 (1994), *cert. denied*, 515 U.S. 1137, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995).

To the extent that Williams' post-conviction assertions in this appeal can be seen as distinct from those raised on direct appeal, it is noteworthy that Williams offers no argument that the Massachusetts convictions themselves are subject to legiti-

10. Williams contended that the trial court erred by admitting evidence of convictions for crimes that he committed after the murder of Mr. McDonnell. *See Williams*, 541 Pa. at 97, 660 A.2d at 1322.

mate challenge. Nor does he deny having committed the underlying series of violent crimes in Massachusetts. Rather, he merely suggests that he would have proceeded to trial had he been made aware of the potential role of his guilty pleas in the penalty phase of this case.

This Court has identified six areas that are mandatory considerations during a guilty plea colloquy. *See* Pa. R.Crim.P. 319; *Commonwealth v. Persinger*, 532 Pa. 317, 321–22, 615 A.2d 1305, 1307 (1992).[11] Conversely, this Court has held that a defendant's lack of knowledge of the collateral consequences of pleading guilty does not undermine the plea's validity. *See Commonwealth v. Frometa*, 520 Pa. 552, 555–57, 555 A.2d 92, 93 (1989)(rejecting the claim of a foreign national that his guilty plea to drug charges was not knowing and voluntary, because he was not advised that such plea might result in his deportation). None of the enumerated mandatory considerations is implicated here.

Moreover, while the consequence of Williams' guilty pleas that he has identified is most serious, given Williams' existing criminal history of other felony convictions, the Massachusetts crimes would not necessarily be central to the jury's penalty decision in this case. The independent evidence of Williams' three Pennsylvania robbery convictions would alone have been sufficient to establish the aggravator. *See generally Commonwealth v. Clark*, 551 Pa. 258, 283, 710 A.2d 31, 43 (1998)(finding that the Commonwealth's proffer of two prior robbery convictions constituted sufficient evidence to support a capital sentencing jury's finding of the (d)(9) aggravator), *cert. denied,* —— U.S. ——, 119 S.Ct. 1465, 143 L.Ed.2d 550 (1999). Therefore, it would appear that, in the circumstances of this case, the prospective role of the guilty pleas in the penalty hearing was in the nature of a collateral conse-

11. These areas include: the defendant's understanding concerning the nature of the charges; the factual basis for the plea; the defendant's understanding of the right to trial by jury; the defendant's understanding concerning the presumption of innocence; the defendant's awareness of the permissible range of sentences and/or fines; and defendant's awareness concerning the non-binding effect of a plea agreement upon the sentencing court. Pa.R.Crim.P. 319, Comment.

quence of the pleas. For this reason, because Williams asserts no other challenge to the validity of the pleas, and because the independent evidence of violent crimes is itself sufficient to support the jury's finding of the (d)(9) aggravator, we find no legal error in the PCRA court's decision to dismiss this claim.

### F. *Alleged misrepresentation of Williams' prior criminal record*

In his seventh ground for relief, Williams asserts that his death sentence should be vacated, because the district attorney misrepresented Williams' record of prior convictions in his argument to the jury concerning the (d)(9) aggravator. Preliminarily, Williams challenges the district attorney's use of the word "murder" in his statements to the jury, because Williams' homicide conviction was for manslaughter. Williams also claims that the district attorney distorted the circumstances of Williams' other Massachusetts convictions by claiming that Williams shot his victim, when, in fact, there is no basis in the record to support that conclusion.[12]

Williams' assertions of prosecutorial misconduct and error on the part of the trial court in this regard are waived. Additionally, his claims again overlap with those made on direct appeal, in which this Court expressly reviewed, and indeed quoted, most of the very passages from the trial transcript about which Williams complains here.[13]

---

**12.** The district attorney's first use of the word "murder" was merely in connection with his description of the Massachusetts indictments, which included charges for murder. There, he clearly and accurately described the actual disposition as a manslaughter conviction. The Commonwealth concedes, however, that a second reference to "murder" made by the district attorney in connection with the Massachusetts crimes was erroneous. The reference to an actual shooting in connection with Williams' other Massachusetts convictions also appears to lack factual support in the record.

**13.** These portions of the transcript were reviewed in connection with Williams' argument that the district attorney committed prosecutorial misconduct at the penalty hearing by improperly urging the jury to consider the murder of Mr. McDonnell in connection with its consideration of the (d)(9) aggravator. *See Williams*, 541 Pa. at 96, 660 A.2d at 1322.

■ To the extent that Williams' efforts can be seen as asserting new claims, and such claims implicate the stewardship of trial counsel, they also must be rejected. The district attorney's actual presentation to the jury of the record of Williams' Massachusetts convictions was factual and, in large part, taken directly from the record of those convictions. While Williams has identified one actual and another possible misstatement made during the district attorney's summation,[14] the trial court repeatedly cautioned the jury that the advocates' arguments were not evidence. Moreover, as previously noted, the record contains uncontradicted evidence of Williams' four convictions for felonies involving the use or threat of violence independent of the two challenged in this claim (three Pennsylvania and one Massachusetts robbery convictions). In light of the above, it cannot be said that any failure on trial counsel's part undermined the reliability of the penalty verdict. Accordingly, no relief is due.

### G. *Constitutional challenge to Section 9711(d)(9)*

As his eighth claim of error, Williams asserts that Section 9711(d)(9) is unconstitutionally vague and challenges trial counsel's failure to raise this issue at trial and on direct appeal. Williams merely asks that we reconsider the Court's numerous prior rulings rejecting these arguments. *See, e.g., Commonwealth v. Hill*, 542 Pa. 291, 315, 666 A.2d 642, 654 (1995), *cert. denied*, 517 U.S. 1235, 116 S.Ct. 1880, 135 L.Ed.2d 175 (1996); *Commonwealth v. Fahy*, 512 Pa. 298, 315–16, 516 A.2d 689, 697–98 (1986); *Commonwealth v. Beasley*, 504 Pa. 485, 498–99, 475 A.2d 730, 737 (1984).[15] We decline to do so.

**14.** Williams does not specifically deny that an actual shooting underlies his Massachusetts assault and battery conviction. Rather, he merely argues that the Commonwealth failed to prove that an actual shooting occurred.

**15.** It is noteworthy that the United States Supreme Court upheld, against a vagueness challenge, a California statute which establishes as an aggravating circumstance "the presence or absence of criminal activity by the defendant which involves the use or attempted use of force or violence or the express or implied threat to use force or violence." *Tuilaepa v. California*, 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). The Court explained:

### H. *Statements to the jury regarding the (d)(9) aggravator*

Williams' ninth ground for relief reiterates the assertion, rejected by this Court on direct appeal, that the district attorney, in his penalty summation, characterized the killing of Mr. McDonnell as part of Williams' significant history of felony convictions for purposes of establishing the (d)(9) aggravator. There is no credible argument that this claim, even if restyled as a claim of ineffectiveness, has not been previously litigated. *See Williams,* 541 Pa. at 96, 660 A.2d at 1322. Therefore, no relief is available under the PCRA.

### I. *Failure to instruct the jury that "life means life"*

In his tenth claim, relying upon *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), Williams asserts that trial counsel should have requested an instruction during the penalty hearing that a defendant in a capital case who is sentenced to life imprisonment is ineligible for parole. Williams concedes that, under current law, the requirement of a *Simmons* instruction arises only in cases in which the future dangerousness of a defendant is expressly implicated. *See Commonwealth v. May,* 551 Pa. 286, 291, 710 A.2d 44, 47 (1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 818, 142 L.Ed.2d 676 (1999). Williams contends, however, that his future dangerousness was at issue, based upon the Commonwealth's evidence of his behavior in connection with the killing of Mr. McDonnell, the evidence of the other convictions presented in connection with the (d)(9) aggravator, and certain statements made by the district attorney during his guilt and penalty phase summations.

> [This aggravating circumstance] is phrased in conventional and understandable terms and rests in large part on a determination whether certain events occurred, thus asking the jury to consider matters of historical fact.... Both a backward-looking and forward-looking inquiry are a permissible part of the sentencing process ... and the States have considerable latitude in determining how to guide the sentencer's decision in this respect. Here, [the challenged aggravator] is not vague.

*Tuilaepa,* 512 U.S. at 976–77, 114 S.Ct. at 2637 (citations omitted).

At the time of Williams' trial, this Court had forbidden a *Simmons*-type instruction. *See Commonwealth v. Szuchon*, 548 Pa. 37, 43–44, 693 A.2d 959, 962, cert. denied, —— U.S. ——, 118 S.Ct. 224, 139 L.Ed.2d 157 (1997). Trial counsel thus reasonably declined to seek an instruction that was forbidden by then-controlling law, and was not ineffective for failing to anticipate *Simmons*. *See Commonwealth v. Gibson*, 547 Pa. 71, 105, 688 A.2d 1152, 1169, *cert. denied*, —— U.S. ——, 118 S.Ct. 364, 139 L.Ed.2d 284 (1997). Moreover, because it announced a "new rule," *Simmons* has no retroactive application in collateral proceedings. *O'Dell v. Netherland*, 521 U.S. 151, 152–53, 117 S.Ct. 1969, 1971, 138 L.Ed.2d 351 (1997); *Henry*, 550 Pa. at 365–66, 706 A.2d at 323.

Further, a *Simmons* instruction is not required based upon references to a defendant's past violent acts alone. *May*, 551 Pa. at 291, 710 A.2d at 47. Therefore, the Commonwealth's evidence concerning Williams' commission of violent crimes, including the killing of Mr. McDonnell, is not alone sufficient to indicate the requirement for the instruction. Nor does our review of the record disclose that the district attorney put Williams' future dangerousness before the jury.[16] At no time during either phase of trial did the district attorney argue or suggest that the death penalty should be imposed because Williams could potentially hurt someone else in the manner in which he harmed Mr. McDonnell. Nor did the prosecutor suggest that if a sentence of life imprisonment were imposed, Williams eventually could be released on parole. The evidence that was adduced and arguments that were made during trial were not the equivalent of raising the issue of future dangerousness. *See May*, 551 Pa. at 291, 710 A.2d at 47.

16. Williams cites to pages 53, 57 and 58 of the January 31, 1992, transcript in support of his claim that "[t]he prosecutor, in his guilt phase closing argument, emphasized that Appellant would be a danger to others if he was not in prison." On the contrary, however, those pages merely contain a portion of the district attorneys' summary of the evidence of guilt which was presented to the jury and fair associated commentary.

Accordingly, even if review were available on this issue, no relief would be due.

## J. *Instructions related to mitigating circumstances*

Eleventh, Williams contends that trial counsel was ineffective for failing to object to the trial court's instructions concerning the role of mitigating circumstances in the jury's penalty determination. Specifically, Williams argues that the trial court's instructions suggested to the jury that Williams' burden in establishing a mitigating circumstance was greater than the Commonwealth's burden in establishing an aggravating circumstance. With emphasis upon the latter part of the statement, Williams focuses upon the following language from the trial court's instructions:

> The aggravating circumstances must be proven by the Commonwealth beyond a reasonable doubt. A mitigating circumstance, on the other hand, must be proven by the Defendant by a preponderance of the evidence, that is *by a greater weight of the evidence.*

(emphasis added).

 Like Williams' other claims of trial error, this claim is waived. To the extent that ineffective assistance of counsel is asserted, the trial court possessed broad discretion in phrasing its instructions to the jury and was permitted to choose its own wording so long as the law was clearly, adequately and accurately presented to the jury for consideration. *Commonwealth v. Hawkins,* 549 Pa. 352, 391, 701 A.2d 492, 511 (1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998). Furthermore, a trial court need not accept counsel's wording for an instruction, as long as the instruction given correctly reflects the law. *Commonwealth v. Ohle,* 503 Pa. 566, 582, 470 A.2d 61, 70 (1983). It is axiomatic that, in reviewing a challenged jury instruction, an appellate court must consider the entire charge as a whole, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue. *Commonwealth v. Jones,* 546 Pa. 161, 192, 683 A.2d 1181, 1196 (1996).

▉▉▉ Here, in addition to the statement quoted by Williams, the trial court instructed the jurors as follows:

As I explained before and I will do so again, the Commonwealth must prove any aggravating circumstance beyond a reasonable doubt. This does not mean that the Commonwealth must prove the aggravating circumstances beyond all doubt or to a mathematical certainty. A reasonable doubt is the kind of doubt that would cause a reasonable, sensible person to hesitate before acting upon a matter of importance in his own affairs. A reasonable doubt must be a real doubt. It may not be one a juror imagines or makes up just to avoid carrying out an unpleasant duty.

By contrast, the Defendant must prove any mitigating circumstances. However, he *only* has to prove it by a preponderance of the evidence, that is, by a greater weight of the evidence.

\* \* \*

[E]ach of you is free to regard a particular mitigating circumstance as present despite what the other jurors may believe. There's different treatment of aggravating and mitigating circumstances, one of the law's safeguards against unjust death sentences. It gives the Defendant the full benefit of any mitigating circumstances. It's closely related to the burden of proof requirement. Remember, the Commonwealth must prove aggravating circumstances beyond a reasonable doubt, while the Defendant *only* has to prove a mitigating circumstance by a preponderance of the evidence.

(emphasis added). Thus, when viewed as a whole, the trial court's penalty phase instructions plainly informed the jury concerning the relative burdens of proof applicable to aggravating circumstances and mitigating circumstances and clearly conveyed that Williams bore the lesser burden. Counsel cannot be deemed ineffective for failing to object to a proper charge. Accordingly, no relief is due on this claim.

### K. *Adequacy of the defense's penalty phase presentation*

In the twelfth of his grounds for relief, Williams asserts that trial counsel was ineffective during the penalty phase for

failing to make an adequate argument for life and for failing to investigate, develop and present significant mitigating evidence. Drawing from a dozen supporting declarations, including those of his mother and father, grandmother, sister and several acquaintances, Williams describes his childhood as a traumatic one, characterized by violent abuse by family members and others, racial discrimination, rejection and abandonment. Williams also points to his history of mental health treatment at Northeast Community Center for Mental Health/Mental Retardation ("NCCMH/MR") beginning at the age of twelve; involuntary commitment to Philadelphia Psychiatric Center at the age of fourteen spanning several months; a second commitment at the age of fifteen; and a subsequent discharge from this commitment against medical advice into the custody of his mother. According to Williams, such records establish his mental illness as a mitigating factor. Williams also claims to have suffered from physical manifestations of his mental illness, including confusion and blackouts. Williams asserts that all statements and records would have been available at trial had trial counsel properly investigated and prepared the case of mitigation, and that he advised trial counsel of his history of mental illness.

Williams also claims that, given his history of mental illness and psychiatric institutionalization, trial counsel was ineffective for failing to obtain the assistance of a mental health expert. In this regard, Williams offers the declaration of Dr. Barry Crown, who asserts that he administered psychological tests to Williams and would testify that Williams suffered from organic brain damage at the time Mr. McDonnell was killed. Among other things, Dr. Crown's affidavit states:

> Mr. Williams is a mentally impaired and deficient individual and was so prior to and at the time of the offense. Due to his neuropsychological dysfunction, he lacks language skills, reasoning capacity and the ability to think rationally. He suffered and suffers from emotional lability, impaired judgment, impaired impulse control and impaired cognition, and is deficient in several areas of functioning. . . .

... Mr. Williams' brain damage and other mental health impairments and cognitive impairments, and the effects of his childhood mistreatment, significantly diminish his capacity to premeditate and form a specific intent to kill.

... Mr. Williams' brain damage and other deficiencies establish that at the time of the offense he suffered from a substantially impaired capacity to appreciate the criminality of conduct and conform conduct to the requirements of the law, and suffered from extreme mental and emotional disturbances.[17]

Williams argues that the combination of organic impairment and his dysfunctional background and emotional and personality disturbances establishes compelling mitigating circumstances. Williams further compares such statements and records with the evidence presented in mitigation at trial, which he characterizes as meager.

The sole mitigating evidence presented at the penalty hearing consisted of the following exchange with Williams' mother:

Q. Miss Williams, can you tell us Roy's date of birth?

A. 12/26/64.

Q. Now, Mrs. Williams, as you understand, of course, your son has been convicted of First Degree Murder. Is there anything you would like to say on behalf of your son this morning to the Jury?

A. I would like to say to the Members of the Jury that Roy has always been a good son to me. Roy and his sister and I lived here all our lives in Philadelphia. I recently moved to Nevada about two years ago. He's always been a good son. He's only 27. And I really could only ask that you find it in your heart to spare his life.

Q. Thank you.

---

**17.** Attached to his appellate brief, Williams also includes a declaration from Dr. Robert Fox, containing statements and opinions along the lines of those presented in Dr. Crown's declaration. This declaration apparently was inadvertently omitted from the submission to the PCRA court.

 Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests. *See Commonwealth v. Williams*, 537 Pa. 1, 28, 640 A.2d 1251, 1265 (1994)(citing *Commonwealth v. Savage*, 529 Pa. 108, 112, 602 A.2d 309, 311 (1992)). Trial counsel will not be deemed ineffective for failing to assert a claim that would not have been beneficial, or for failing to interview or present witnesses whose testimony would not have been helpful. *See Williams*, 537 Pa. at 29, 640 A.2d at 1265; *see also Commonwealth v. McNeil*, 506 Pa. 607, 619, 487 A.2d 802, 808 (1985). Nor can a claim of ineffective assistance generally succeed through comparing, by hindsight, the trial strategy employed with alternatives not pursued. *See Commonwealth v. Chester*, 526 Pa. 578, 612, 587 A.2d 1367, 1384, *cert. denied*, 502 U.S. 959, 112 S.Ct. 422, 116 L.Ed.2d 442 (1991); *see also Commonwealth v. Washington*, 549 Pa. 12, 32, 700 A.2d 400, 410 (1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 2375, 141 L.Ed.2d 742 (1998). A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. *See Commonwealth v. Brown*, 544 Pa. 406, 425, 676 A.2d 1178, 1186 (citing *Commonwealth v. Pirela*, 510 Pa. 43, 59, 507 A.2d 23, 31 (1986)), *cert. denied*, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 538 (1996).

This Court, in a plurality decision, recently vacated a sentence of death in a case in which counsel was found to have been ineffective where, after having been informed that his client suffered from mental illness, counsel failed to pursue such evidence as a potential mitigating circumstance in the penalty phase of trial. *See Commonwealth v. Smith*, 544 Pa. 219, 245, 675 A.2d 1221, 1233–34 (1996)(plurality opinion), *cert. denied*, 519 U.S. 1153, 117 S.Ct. 1090, 137 L.Ed.2d 223 (1997).[18] On the other hand, this Court has declined to find counsel ineffective for failing to proffer testimony from a mental health professional to establish a mitigating circum-

18. In her concurring opinion, Madame Justice Newman noted her agreement that counsel was ineffective for failing to investigate the

stance where there was no showing that such testimony was indicated by evidence of mental illness, or that such testimony would have been beneficial in terms of altering the outcome of the penalty phase hearing. *See, e.g., Commonwealth v. Howard,* 553 Pa. 266, 276–77, 719 A.2d 233, 238–39 (1998); *Lark,* 548 Pa. at 458, 698 A.2d at 51; *Brown,* 544 Pa. at 425, 676 A.2d at 1187; *see also Commonwealth v. Smith,* 539 Pa. 128, 134 n. 6, 650 A.2d 863, 866–67 n. 6 (1994), *cert. denied,* 514 U.S. 1085, 115 S.Ct. 1799, 131 L.Ed.2d 726 (1995).

 In this case, adopting the Commonwealth's arguments, the PCRA court denied relief, because: 1) Williams' argument that the jury would have attached substantial weight to the statements alleged in the supporting declarations, even if they were true, is utter speculation; 2) the opinions of Williams' experts are conclusory and medically unsubstantiated. It does appear, however, that substantial evidence of a history of mental illness on the part of Williams may have been available to trial counsel. Accordingly, pursuant to the reasoning of *Smith,* trial counsel would have been obliged to explore such evidence if it was brought to his attention. Whether trial counsel was made aware of Williams' history of mental treatment is a factual issue which we cannot resolve in this appeal. Further, although we agree with the Commonwealth that substantial portions of the experts' declarations are conclusory, we do not agree that their credibility can be adequately assessed in this case absent factfinding. Clearly, a material factual controversy exists in this regard; therefore, we hold that the PCRA court erred in dismissing Williams' twelfth ground for relief without conducting a factual hearing. *See generally* Pa.R.Crim.P. 1509(b). Accordingly, we will remand for a hearing on Williams' twelfth asserted ground for relief and require that the PCRA court issue findings of fact and conclusions of law appropriate to its post-hearing merits disposition.

potentially mitigating evidence, but wrote separately to emphasize that this Court repeatedly has found that the failure of defense counsel to adequately prepare, particularly in a capital case, is an abdication of the minimum performance required. *See Smith,* 544 Pa. at 246–47, 675 A.2d at 1234 (Newman, J., concurring).

## L. *Failure to develop a diminished capacity defense*

The thirteenth of Williams' grounds for relief is his assertion that trial counsel was ineffective during the guilt phase of trial for failing to investigate and develop diminished capacity and guilty-but-mentally-ill defenses. Based upon the declarations of his experts, Williams argues that he lacked the requisite capacity to appreciate the criminality of his conduct and conform to the requirements of the law.

 Preliminarily, Williams' arguments related to a "guilty but mentally ill" defense are misplaced. In a capital case, an assertion of "guilty but mentally ill" is properly considered only in the penalty phase of trial and is subsumed within the mitigating circumstances set forth at Section 9711(e)(2) and (e)(3), 42 Pa.C.S. *Commonwealth v. Hughes,* 536 Pa. 355, 376–77, 639 A.2d 763, 774 (1994)(noting that "a verdict of 'guilty but mentally ill' does not address a defendant's legal responsibility for the acts committed, but rather reflects a penological concern and therefore, is properly considered during the sentencing phase").

 With regard to the diminished capacity defense, such defense is applicable in those cases in which a defendant admits criminal liability but contests the degree of guilt. *See Commonwealth v. Paolello,* 542 Pa. 47, 78, 665 A.2d 439, 455 (1995). The defense is an extremely limited one, which entails the assertion that the defendant's mental condition at the time of the offense was such that he was incapable of forming the specific intent to kill. *See Commonwealth v. Zettlemoyer,* 500 Pa. 16, 28, 454 A.2d 937, 943 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).

As in *Paolello,* the assertion of a diminished capacity defense in this case would have been in direct contradiction to Williams' theory, supported by the witnesses he presented at trial, that some other person had committed the murder.[19] Arguably, a reasonable basis for trial counsel's strategy appears on the record; therefore, trial counsel should not be

---

**19.** Williams offered the testimony of Harry Tunstall, a tenant of a building near the scene of the murder, and Robert Miller, the owner of

deemed ineffective for failing to assert the contradictory defense. *Id.; see generally Williams*, 537 Pa. at 28, 640 A.2d at 1265. Recently, however, in *Commonwealth v. Legg*, 551 Pa. 437, 711 A.2d 430 (1998), this Court found such a conclusion unwarranted in light of specific post-conviction testimony by trial counsel indicating that he did not, in fact, consider and investigate a diminished capacity defense, despite the petitioner's substantial prior history of mental illness.

*Legg* is distinguishable in a number of respects. For example, the petitioner in that case, in her defense at trial, admitted to having been the instrumentality of the crime, but claimed that her actions were accidental; whereas, Williams' trial theory was that he was not at all involved in the crime. However, we will reserve decision as to whether such distinctions are with or without a difference, since we already have found that remand of this case is appropriate for findings connected with the credibility of Williams' proffered mental health evidence. Such findings will also inform the ultimate disposition of the diminished capacity issue. Thus, we will direct that the scope of the PCRA court's inquiry shall include the thirteenth ground for relief stated in Williams' petition, and that the PCRA court should render findings of fact and conclusions of law in resolution of such claim.

## M. *Cumulative effect of alleged errors*

In the final ground for relief asserted in his post-conviction petition,[20] Williams argues that the cumulative effect of alleged

an arcade that the Commonwealth's eyewitnesses testified they had visited with Williams immediately prior to the killing. Tunstall testified that he heard shots and witnessed a white man running from another man, who Tunstall identified as James Williams, in the vicinity of the crime scene. Tunstall further testified that he saw the white man fall, then returned to his own activities. Miller testified that his arcade was never open after 9:00 p.m. and, thus, would have closed prior to the time the Commonwealth witnesses indicated they had visited the establishment. The testimony of both men and the associated arguments were offered to undermine the Commonwealth's contention that Williams actually committed the murder.

**20.** In his petition, Williams also identified relaxed waiver and ineffective assistance of counsel, addressed previously in this opinion, as the fifteenth and sixteenth of his substantive grounds for relief.

errors during the guilt and penalty phases of trial and on direct appeal undermines the integrity of his conviction and sentence. Such arguments generally have been rejected in favor of an individualized assessment of the merits of claimed trial errors. *See generally Commonwealth v. Murphy*, 540 Pa. 318, 336 n. 6, 657 A.2d 927, 936 n. 6 (1995)(citing *Commonwealth v. Williams*, 532 Pa. 265, 615 A.2d 716 (1992)). Moreover, at this stage of the proceedings, we have found only error in procedures (failure to conduct a hearing and issue findings on three issues), rather than validating any claims that could possibly, individually or by cumulative effect, implicate substantive relief under the PCRA.

## N. *Allegations of racial bias in jury selection*

In his supplement submitted to the PCRA court after it had announced its intent to dismiss the PCRA petition, Williams attempts to raise a challenge to the verdict based upon the equal protection clause to the United States Constitution pursuant to the decision of the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Williams, an African–American, alleges that the Commonwealth used its peremptory strikes in a racially discriminatory manner to exclude African–Americans from the jury. Williams contends that he is entitled to an evidentiary hearing to make a record of the alleged *Batson* violation and of trial counsel's ineffectiveness in failing to raise and litigate this issue. Williams' claim includes allegations that the Philadelphia District Attorney's Office employed a systematic prosecutorial practice of discrimination at the time of his trial. Citing to statistics from the Pennsylvania Department of Corrections, Williams also claims generally that a disproportionate number of African–Americans are sentenced to death in this Commonwealth.

As stated, this claim is waived by the failure to raise it on direct appeal. To the extent that Williams brings his trial counsel's effectiveness into question, both the timing and the substance of the claims are implicated. With regard to the timing, Pa.R.Crim.P. 1505 provides that a PCRA court *may*

grant leave to amend, thus vesting the decision to permit amendment within the PCRA court's discretion, subject to the proviso that amendment is to be freely allowed to achieve substantial justice. *See* Pa.R.Crim.P. 1505(a). The assertion of a new claim after the court has heard argument and indicated its intent to dismiss the petition militates in favor of the decision to deny leave to amend.

With regard to the substance of the claims, Williams' contentions are general in nature and lack sufficient connection to the actual selection of jurors in his own capital case. For example, Williams does not include any allegations concerning the race of venirepersons removed by the Commonwealth during *voir dire*, the race of the jurors who actually served at trial, or the race of the jurors acceptable to the Commonwealth who were stricken by the defense. Moreover, the United States Supreme Court has found the sort of broad statistics Williams seeks to offer inadequate to support a defendant's claim of racial discrimination in the selection of a particular capital sentencing jury. *See McCleskey v. Kemp*, 481 U.S. 279, 296–97, 107 S.Ct. 1756, 1769–70, 95 L.Ed.2d 262 (1987).

 Given the generality of this claim and the timing of its assertion, we cannot say that the PCRA court abused its discretion in declining to consider it. Accordingly, no relief is due.

## III. *Conclusion*

The decision of the PCRA court is affirmed in all respects, save as indicated in the body of this opinion. The matter is remanded for limited further proceedings, and jurisdiction is relinquished.

Justice CASTILLE files a concurring opinion.

CASTILLE, Justice, concurring.

I agree with the majority that remand to the PCRA court for a hearing on factual and credibility issues, which cannot be decided by this Court based on the present record, is neces-

sary. I write separately only to emphasize the portion of the Majority Opinion that criticizes the PCRA court's wholesale adoption of the Commonwealth's brief and because I believe that review of any of the issues raised in the petition is premature under the circumstances. The PCRA court's failure to draft an opinion addressing the claims constitutes an abdication of the trial court's duty which cannot be condoned. While the PCRA court undoubtedly intended only to conserve its judicial energies, this manner of conservation is inappropriate. This Court's review of certain of the issues raised in the PCRA petition should not proceed until a proper opinion is filed by the court below.

The obvious purpose of Pa.R.A.P.1925(a) is to facilitate appellate review of a particular trial court order. Additionally, however, the rule fulfills an important policy consideration by providing to disputing parties, as well as to the public at large, the legal basis for a judicial decision. The trial court's adoption of one party's advocacy brief, in lieu of an independent judicial opinion, deprives the parties and the public of the independent reasoning of the court. This is especially true for the public because the briefs themselves are normally not as accessible as a judicial opinion may be.

Of course, the incorporation of parts of the record is clearly permissible under Pa.R.A.P.1925(a) and the PCRA court correctly considered the Commonwealth's brief as part of the record below.[1] However, there must be an independent judicial opinion in which the record can be incorporated. Here, the PCRA court's opinion merely recounts the procedural history of the case and then proceeds to adopt one of the

---

1. Pa.R.A.P.1921 describes the composition of the record on appeal as including "the original papers and exhibits filed in the lower court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court...." Thus, the PCRA court properly considered the briefs as part of its record because the briefs were "original papers" filed in the PCRA court. *See Dorn v. Stanhope Steel, Inc.*, 368 Pa.Super. 557, 563 n. 1, 534 A.2d 798, 801 n. 1 (1987)(citing *Commonwealth v. Rini*, 285 Pa.Super. 475, 482 n. 6, 427 A.2d 1385, 1389 n. 6 (1981)). *See generally* Darlington, et al., 2 Pennsylvania Appellate Practice § 1921:7. (2d ed.1998)(stating that briefs filed in the trial court are part of the record before the trial court).

advocate's briefs—in its totality—as the basis for denying the petition. This constitutes patently insufficient judicial review because the Commonwealth's brief reflects a spirit of advocacy, whereas a judicial opinion should evidence the reasoning of an impartial decision-maker. *Commonwealth v. Scales*, 309 Pa.Super. 171, 173 n. 5, 454 A.2d 1138, 1139 n. 5 (1983); *see also* Darlington, et al., 2 Pennsylvania Appellate Practice § 1925:1 (2d ed.1998)(stating that in no event should the trial judge merely adopt a brief of counsel as the reasons for the order).

Notwithstanding the Majority's laudable interest in judicial economy by addressing some of the issues, I believe the preferred practice of this Court requires that we remand the entire matter to the PCRA court for an opinion which addresses all the relevant issues and which states the court's reasons for denying relief. This Court should not review any of the issues until the PCRA court complies with Pa.R.A.P. 1925(a). *See Commonwealth v. Wood*, 432 Pa.Super. 183, 198, 637 A.2d 1335, 1342–43 (1994)(stating that failure to comply with Pa.R.A.P.1925(a) normally warrants remand to the lower court for preparation of an opinion). Judicial economy would have been better served had the PCRA court filed a meaningful opinion in the first instance. Had the PCRA court followed the appropriate procedure, this Court would not have had to assume the responsibility that rightfully belongs in the lower court; that is, initially reviewing and disposing of issues that appellant may have later chosen not to pursue on appeal to this Court had a trial court opinion been rendered.