NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1498
_____

EDWARD MONROE,
                            Appellant

v.

SUPERINTENDENT COAL TOWNSHIP SCI;[*] THOMAS DOHMAN;
COI MCGREGORY; LIEUTENANT KARANZAN; BRIGHT; HARGROVE;
HAYES, CORRECTIONS OFFICERS; JOHN DOES 1 THROUGH 7
_____

On Appeal from the District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-10-cv-03798)
(Honorable Thomas N. O'Neill, Jr.)
_____

Argued: November 18, 2014

Before: AMBRO, SCIRICA, and ROTH, Circuit Judges

(Filed: January 26, 2015)

H. Robert Fiebach, Esq. [ARGUED]
Kevin M. Kelly, Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103

        *Counsel for Appellant*

_____

[*] Appellees note that the Superintendent of Coal Township SCI is not in fact a party. Monroe was incarcerated at Graterford SCI when the alleged events underlying this suit occurred, but he is currently incarcerated at Coal Township. *See* Appellees' Br. 5 n.2.

Claudia M. Tesoro, Esq. [ARGUED]
Office of Attorney General of Pennsylvania
21 South 12st Street
Philadelphia, PA 19107

     *Counsel for Appellees*

_____

OPINION[†]

_____

**SCIRICA**, *Circuit Judge*

Edward Monroe appeals the dismissal of his 42 U.S.C. § 1983 claim of denial of access to the courts. We will affirm.[1]

I.[2]

Monroe is serving a sentence of life without parole "for criminal homicide under 18 Pa. C.S.A. § 2501." Second Am. Compl. ¶ 4 ("SAC"). He contends that in late April or early May 2008, he received an envelope containing two handwritten letters addressed to him. Neither the letters nor their envelope bore a return address.

The first letter was signed by Denise Gaines, "a witness for the Prosecution at the criminal trial which led to [Monroe's] present incarceration." SAC ¶ 15. According to Monroe's recollection of Gaines's letter,

---

[†] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] On appeal, Monroe challenges the dismissal, with prejudice, of this claim only. *See infra* note 4. The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have appellate jurisdiction under 28 U.S.C. § 1291.

[2] The facts recounted in this opinion are drawn from the well-pleaded, nonconclusory factual allegations in Monroe's Second Amended Complaint and all reasonable inferences to be drawn therefrom. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Gaines apologized for failing to tell the truth while under oath in Plaintiff's criminal trial. She acknowledged that she had lied in testifying against Plaintiff. She noted that she was aware that the Police Department had planted evidence in the form of a burnt purse against Plaintiff. She explained that representatives of the Police Department and the District Attorney's Office had convinced her to lie by threatening her with criminal charges, warning that they would take away her children, and promising her a sentence reduction in an unrelated criminal matter. Gaines cited her recent embrace of God and her active involvement in church activities as the motivation behind her recantation.

SAC ¶ 16.

In the second letter, which was unsigned, the anonymous writer claimed to have helped Gaines draft her letter. "The writer stated that he or she preferred to remain anonymous for the time being because he or she feared for his or her safety. However, the writer also stated that he or she would make things right for his or her previous wrongdoing." SAC ¶ 17.

After he received these letters, Monroe "began to research how he could use [them] to secure his freedom." SAC ¶ 18. He prepared "legal materials, including research notes, draft pleadings and petitions, and supporting memoranda of law," SAC ¶ 18, and gave copies of the letters and these legal materials to two other inmates "for safekeeping," SAC ¶ 19.

On June 21, 2008, a defendant corrections officer searched Monroe's cell in what Monroe claims was retaliation for exercising his free speech rights in distributing pamphlets to other inmates. Escorted from his cell and placed in the Restricted Housing Unit, Monroe left the legal materials sitting out in plain view. The following day, another inmate saw corrections officers carrying Monroe's belongings from his cell. On July 3, 2008, Monroe requested the return of the letters and legal materials, but the box of legal

3

materials he received a week later did not include the letters or his related legal materials. In addition, according to the inmates to whom Monroe had trusted copies of his materials, their copies were seized and destroyed on July 4, 2008. When Monroe was finally granted permission to access the property room on July 31, 2008, he found that the letters and legal materials were missing. Monroe initiated formal grievances but never recovered the letters or his related legal materials. Denise Gaines died on January 25, 2009, "before Plaintiff was able to locate or contact her." SAC ¶ 43.

Monroe claims that he lost the opportunity to pursue a claim for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541–9546, as a result of the destruction of the letters and his related legal materials. In particular, he claims that, had the defendants not destroyed the letters, he "could have sought the appointment of counsel to further investigate the exculpatory information described" in them. SAC ¶ 45. With the letters, he would have been more likely to obtain counsel, who "could have taken steps to locate Gaines" and the anonymous author, who, in turn, "could have identified exculpatory evidence," which, "[i]f it had been available at the time of [Monroe's criminal] trial, would have been sufficient to have changed the outcome." SAC ¶¶ 46–48.

In his First Amended Complaint, filed October 23, 2012,[3] Monroe asserted claims under 42 U.S.C. § 1983 for violation of his right of access to the courts and retaliation for

---

[3] Monroe filed a pro se complaint, *in forma pauperis*, on September 1, 2010. On January 4, 2011, the District Court ordered the Clerk of Court to attempt to appoint counsel for Monroe from the Prisoner Civil Rights Panel, and counsel entered their appearance on May 3, 2012.

grievances and lawsuits he had previously filed. On defendants' motion under Federal Rule of Civil Procedure 12(b)(6), the District Court dismissed both claims against several defendants and dismissed Monroe's right of access claim in its entirety but with leave to amend. The court explained that the First and Fourteenth Amendments secure to prisoners the right of access to the courts to directly or collaterally challenge their sentences or conditions of confinement. *See Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (per curiam) (citing *Lewis v. Casey*, 518 U.S. 343, 346, 354-55 (1996)). Where a plaintiff alleges that the defendants' actions have cost him the opportunity to pursue a past legal claim, he "must show (1) that [he] suffered an 'actual injury'—that [he] lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim" and (2) that he has no remedy "other than in the present denial of access suit." *Id.* (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). Accordingly, in order to show the sufficiency of the underlying claim, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Id.* at 205-06 (citing *Harbury*, 536 U.S. at 416-17). These pleading requirements were not met, the District Court reasoned, because Monroe did not "specifically allege how the testimony that Gaines allegedly sought to recant would allow him to mount a nonfrivolous challenge to his sentence." The court therefore could not reasonably infer that the underlying PCRA case he claimed he would have brought was not frivolous.

Monroe filed his Second Amended Complaint on August 22, 2013, and the defendants again moved to dismiss. Monroe argued that his right of access claims should be permitted to proceed because he had added allegations that "specif[y] the causal

connection between the destruction of the Letters and his inability to file a PCRA petition." App. 164; *see Monroe v. DiGuglielmo*, No. 10-3798, 2014 WL 348589, at \*5 (E.D. Pa. Jan. 30, 2014). The District Court disagreed. To prevail on a PCRA claim based on newly discovered evidence, the District Court explained, a petitioner must prove that "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." *Commonwealth v. Johnson*, 966 A.2d 523, 541 (Pa. 2009). But without any "allegations regarding the evidence used to establish [Monroe's] criminal homicide convictions or the relevance of Gaines's original testimony thereto," the District Court reasoned, it could do no more than speculate as to whether these elements could be met and, therefore, whether the PCRA claim was arguable as opposed to frivolous or hopeful. *Monroe*, 2014 WL 348589, at \*5. Moreover, Monroe's underlying PCRA claim was more "hopeful" than "arguable" because it relied on an attenuated series of speculative possibilities that he "*could*" have obtained counsel who "*could*" have located Gaines, who "*could*" have identified exculpatory evidence. *Id.* Accordingly, the court dismissed Monroe's right of access claim with prejudice.

On appeal, Monroe raises two arguments. First, he contends, the district court erroneously required Monroe to plead his underlying PCRA claim in accordance with the standard announced in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Second, he contends, regardless of the pleading standard,

6

he pled his underlying claim in sufficient detail.[4]

## II.

### A.

In *Christopher v. Harbury*, the Supreme Court explained that a plaintiff alleging denial of his constitutional right of access to courts "must identify a 'nonfrivolous,' 'arguable' underlying claim." 536 U.S. at 415 (quoting *Lewis*, 518 U.S. at 353 & n.3). Accordingly, "the underlying cause of action . . . is an element that must be described in the complaint . . . by allegations . . . sufficient to give fair notice to a defendant." *Id.* at 415-16. The Court declined "to describe pleading standards for the entire spectrum of access claims," although, noting "a particular risk inherent in backward-looking claims"—"the natural temptation on the part of plaintiffs to claim too much"—the Court "require[d] that the predicate claim be described well enough to apply the 'nonfrivolous' test and to show the 'arguable' nature of the underlying claim is more than hope." *Id.* at 416. That means "the underlying claim should be pled in a manner that satisfies" Federal Rule of Civil Procedure 8(a). *Monroe*, 536 F.3d at 206 n.8 (citing *Harbury*, 536 U.S. at 417-18).

Monroe contends that because *Harbury* was decided before *Twombly* and *Iqbal* and was based on that plaintiff's failure to allege any underlying cause of action whatsoever, *Harbury* should not be interpreted to subject "denial of access" plaintiffs to *Twombly* and *Iqbal*'s requirements of more specific pleading. The District Court

---

[4] Monroe does not challenge the dismissal of his retaliation claim. *See* Reply 4 ("Monroe has confined his appeal to his claim for denial of access to the courts arising from the purposeful destruction of his letters and copies of those letters by prison officials.").

therefore erred, Monroe argues, because it held that his Second Amended Complaint "does not meet the requirements of Rule 8 for pleading [Monroe's] underlying PCRA claim under the standard set forth in *Iqbal*." *Monroe*, 2014 WL 348589, at \*5. We conclude, however, that we need not answer this question to resolve Monroe's appeal.[5]

For substantially the reasons articulated by the District Court, we cannot ascertain from Monroe's Second Amended Complaint whether his underlying PCRA claim is arguable or whether it is frivolous and merely hopeful. Accepting Monroe's well-pleaded, nonconclusory factual allegations to be true, as we must (even under *Iqbal* and *Twombly*, *see Iqbal*, 556 U.S. at 678-79), we discern only that one witness at Monroe's criminal trial claimed to have lied in testifying under coercion and to know that the police planted "evidence in the form of a burnt purse." SAC ¶ 16. In his pleading, Monroe provides no way for us to tell whether Denise Gaines was a central witness, whether her testimony was cumulative with other witnesses' testimony, or how crucial the "burnt purse" was to his conviction. In short, he has failed to describe his underlying PCRA claim "well enough to [permit us] to apply the 'nonfrivolous' test and to show the 'arguable' nature" of his claim. *Harbury*, 536 U.S. at 416. Like the District Court, we have no way of assessing whether he "claim[s] too much." *Id.*; *cf., e.g.*, *Commonwealth v. D'Amato*, 856 A.2d 806, 828 (Pa. 2004) (Castille, J., concurring in part and dissenting in part) ("Where the issue is resolvable as a matter of law based on the existing record—*i.e.*, where the proffered evidence, even if deemed credible, would not meet the PCRA

---

[5] We come to this conclusion notwithstanding the syllogistic logic that the right of access case law requires the underlying claim to be pleaded in accordance with Rule 8(a), and *Twombly* and *Iqbal* interpret Rule 8(a).

standard—a remand is not necessary.").

**B**.

Even so, Monroe claims, he sufficiently stated a factual basis for his denial of access to the courts claim for two reasons. First, he "stated that the basis for his PCRA petition would have been evidence garnered from further investigation of the Letters destroyed by Defendants." Appellant's Br. 20. Second, as we read his contention, Gaines's letter itself (or the evidence described therein), when read against the backdrop of Monroe's criminal trial (of which Monroe asks us to take judicial notice, *see id.* at 23 & n.6), "would have formed the basis for an arguable, nonfrivolous claim under the PCRA," *id.* at 21, because of "the importance of Gaines's testimony to the conviction," *id.* at 23. We disagree with both arguments.

1.

As the District Court correctly noted, Monroe's contention that he could have discovered exculpatory evidence to support a PCRA claim if the defendants had not destroyed the letters is more hopeful than arguable. Monroe's theory, and the one he advanced before the District Court, is that he "would have been more likely to obtain" "help from individuals outside of prison to locate and interview Gaines . . . if he had possession of the Letters while Gaines was still alive." Appellant's Br. 26. While we understand that an incarcerated individual like Monroe would likely lack the wherewithal to investigate the claims made in Gaines's letter without outside (or legal) help, we think the alleged chain of causation is too attenuated and speculative.

As Monroe himself concedes, *see id.* at 27, a PCRA petition based on newly

9

discovered evidence must be filed within sixty days of the discovery. *See* 42 Pa. Cons. Stat. Ann. § 9545(b)(2). Sixty days from Monroe's alleged late April or early May 2008 receipt of the letters would have brought him to "around the beginning of July of 2008," Appellant's Br. 27-28, and he alleges that his letters were seized on June 21, 2008. But Gaines died on January 25, 2009. By Monroe's own theory, the only impediment to his attempting to locate her and conduct an investigation—and, therefore, the only basis for "actual injury"—was the loss of her letter itself. The letter bore no return address. That Monroe would have been more likely to obtain assistance, legal or otherwise, because he had a letter with no address purporting to be from a recanting witness, is speculative enough. That such an investigation would have located Gaines and produced credible exculpatory evidence is yet another speculative assumption. *Cf., e.g.*, *D'Amato*, 856 A.2d at 825 ("[R]ecantation evidence 'is notoriously unreliable, particularly where the witness claims to have committed perjury.'" (quoting *Commonwealth v. Dennis*, 715 A.2d 404, 416 (Pa. 1998))). But Monroe has not alleged that the defendants inhibited his ability to seek outside assistance or legal help other than through the destruction of the letter (or the fact that he was placed in the Restricted Housing Unit pending an investigation into his distribution of pamphlets to other inmates). Nor has he alleged that he could not have timely filed the PCRA petition on the strength of the letter itself (or his recollection of the letter) and then sought from the PCRA court more time to investigate. On this basis, we cannot say that Monroe's underlying PCRA claim was anything more than hopeful.

2.

Monroe's other theory is that, as opposed to having lost the opportunity to seek

10

out Gaines and potentially unearth exculpatory evidence, he could have "present[ed] the letters [themselves] as newly discovery exculpatory evidence." SAC ¶ 44.

Any claim based on the letters alone, however, would have failed from the start. It is true that "even as to recantations that might otherwise appear dubious, the PCRA court must, in the first instance, assess the credibility and significance of the recantation in light of the evidence as a whole." *D'Amato*, 856 A.2d at 825 (citing *Commonwealth v. Williams*, 732 A.2d 1167, 1180-81 (Pa. 1999)). But Monroe could have obtained an evidentiary hearing to determine Gaines's credibility only if he could have located her after producing a signed certification with her "name, address, date of birth and substance of testimony," along with "any documents material to [her] testimony." *Commonwealth v. Washington*, 927 A.2d 586, 600 (Pa. 2007) (quoting 42 Pa. Cons. Stat. Ann. § 9545(d)(1)). Otherwise, "[f]ailure to substantially comply with the[se] requirements" would "render the proposed witness's testimony inadmissible." 42 Pa. Cons. Stat. Ann. § 9545(d)(1). With the letter alone, therefore, Monroe would have gotten nowhere. *See also* Pa. R. Crim. P. 907 cmt. ("The judge is permitted . . . to summarily dismiss a petition for post-conviction collateral relief [if he] determines that the petition is patently frivolous and without support in the record . . . ."). Accordingly, the defendants could not have caused Monroe actual injury by destroying it.[6]

---

[6] Because we find Monroe's contention that he would have been able to locate Gaines and uncover exculpatory evidence but for the destruction of the letter little more than speculative and hopeful, and that he would be unable to use Gaines's letter itself to pursue a nonfrivolous PCRA petition, we see no reason to take judicial notice of Monroe's criminal proceedings and consequently do not consider whether this case presents an exception to the rule that "ordinarily a court of appeals should not take judicial notice of documents on an appeal which were available before the district court

## III.

For the foregoing reasons, we will affirm the District Court's dismissal of Monroe's denial of access to the courts claim under Federal Rule of Civil Procedure 12(b)(6).

---

decided the case but nevertheless were not tendered to that court." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 303 (3d Cir. 2011); *see also, e.g.*, *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 226 (3d Cir. 2009).