J-S34017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KALVIN M. MCCULLOUGH | : | |
| | : | |
| Appellant | : | No. 1630 MDA 2019 |

Appeal from the PCRA Order Entered September 12, 2019
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0004052-2003

BEFORE: PANELLA, P.J., BENDER, P.J.E., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED SEPTEMBER 02, 2020**

Appellant, Kalvin M. McCullough, appeals from the post-conviction court's September 12, 2019 order denying, as untimely, his seventh petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Additionally, Appellant's counsel, Dennis C. Dougherty, Esq., seeks to withdraw his representation of Appellant pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). After careful review, we affirm the order denying Appellant's PCRA petition and grant counsel's petition to withdraw.

The PCRA court provided a detailed summary of the facts and procedural history of Appellant's case, which we need not reproduce herein. ***See*** PCRA Court Opinion (PCO), 12/26/19, at 1-7. We only point out that in 2004, a jury convicted Appellant of four counts each of attempted homicide and aggravated assault, and one count of conspiracy, based on evidence that he shot at four

college students, striking and paralyzing one of them. He was sentenced on October 15, 2004, to an aggregate term of 38 to 76 years' incarceration. Appellant's judgment of sentence was affirmed by this Court on February 9, 2007, and our Supreme Court denied his petition for allowance of appeal on July 6, 2007. *See Commonwealth v. McCullough*, 924 A.2d 695 (Pa. Super. 2007) (unpublished memorandum), *appeal denied*, 927 A.2d 623 (Pa. 2007).

Over the ensuing years, Appellant filed six unsuccessful PCRA petitions. On May 29, 2018, he filed the *pro se* petition underlying the present appeal, claiming that he has discovered new evidence in the form of a confession by a man named Lamar Clark. Attached to Appellant's petition was an affidavit from Clark — dated April 30, 2018 — in which Clark claims he was the person who shot at the victims in this case. The PCRA court appointed Appellant counsel, who filed an amended petition on his behalf. On February 15, 2019, the court conducted an evidentiary hearing, at which Appellant, Clark, and multiple other witnesses testified. On September 12, 2019, the court issued an order and opinion denying Appellant's petition as being untimely filed. Alternatively, the court concluded that Clark's confession was incredible and did not warrant a new trial. *See* PCRA Court Opinion, 9/12/19, at 8-9.

Appellant filed a timely notice of appeal, and he also timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Therein, he preserved the following two issues for our review:

1. The PCRA [c]ourt erred in … finding that the controlling date for [Appellant] to file a [PCRA p]etition under the newly[-]discovered evidence exception to the time[-]bar was within a year of April 22, 2017. The controlling date for the newly[-]discovered evidence exception should have had a start date of April 30, 2018, thus making any PCRA due within one year of said date. In choosing 2017 as the controlling date, the [c]ourt erred in relying on the unsubstantiated rumor that "Mar-Mar" was the shooter, such rumor being inadmissible at any trial or evidentiary proceeding as blatant hearsay. Rather, the proper controlling date should have been April 30, 2018, the date that Lamar Clark signed the notarized affidavit as to his involvement as the true shooter.

2. The PCRA [c]ourt erred in finding [] Clark and [Appellant] to be lacking credibility, as [] Clark was very familiar with the facts of the case and in no way could he have known these facts other than as the perpetrator of the crime.

Pa.R.A.P. 1925(b) Statement, 10/30/19, at 1-2. On December 26, 2019, the PCRA court filed a Rule 1925(a) opinion addressing these two issues. Again, the court determined that Appellant's petition was untimely, **see** PCO at 7-11, and alternatively concluded that Clark's confession was incredible, **id.** at 12-15.

On June 7, 2020, Appellant's counsel, Attorney Dougherty, filed an application to withdraw as counsel and a **Turner/Finley** no-merit letter. In **Turner**, our Supreme Court "set forth the appropriate procedures for the withdrawal of court-appointed counsel in collateral attacks on criminal convictions[.]" **Turner**, 544 A.2d at 927. The traditional requirements for proper withdrawal of PCRA counsel, originally set forth in **Finley**, were updated by this Court in **Commonwealth v. Friend**, 896 A.2d 607 (Pa.

Super. 2006), *abrogated by* **Commonwealth v. Pitts**, 981 A.2d 875 (Pa. 2009),[1] which provides:

> 1) As part of an application to withdraw as counsel, PCRA counsel must attach to the application a "no-merit" letter[;]
>
> 2) PCRA counsel must, in the "no-merit" letter, list each claim the petitioner wishes to have reviewed, and detail the nature and extent of counsel's review of the merits of each of those claims[;]
>
> 3) PCRA counsel must set forth in the "no-merit" letter an explanation of why the petitioner's issues are meritless[;]
>
> 4) PCRA counsel must contemporaneously forward to the petitioner a copy of the application to withdraw, which must include (i) a copy of both the "no-merit" letter, and (ii) a statement advising the PCRA petitioner that, in the event the trial court grants the application of counsel to withdraw, the petitioner has the right to proceed *pro se*, or with the assistance of privately retained counsel;
>
> 5) the court must conduct its own independent review of the record in the light of the PCRA petition and the issues set forth therein, as well as of the contents of the petition of PCRA counsel to withdraw; and
>
> 6) the court must agree with counsel that the petition is meritless.

**Friend**, 896 A.2d at 615 (footnote omitted).

Here, Attorney Dougherty filed a petition to withdraw and a no-merit letter, in which he discusses the issues Appellant wishes to have reviewed, and explains why Appellant is not entitled to relief. Notably, counsel first states that the PCRA court's decision that Appellant's petition is untimely "may

_____

[1] In **Pitts**, our Supreme Court abrogated **Friend** "[t]o the extent **Friend** stands for the proposition that an appellate court may *sua sponte* review the sufficiency of a no-merit letter when the defendant has not raised such issue." **Pitts**, 981 A.2d at 879. In this case, Attorney Dougherty filed his petition to withdraw and no-merit letter with this Court and, thus, our Supreme Court's holding in **Pitts** is inapplicable.

- 4 -

be arguable," as counsel "believe[s] the … court's reasoning to have been incorrect leading to [t]his legal conclusion…." No-Merit Letter, 6/7/2020, at 3. However, counsel does not elaborate on why he believes the court erred in its untimeliness determination. Instead, counsel concludes that any such error "will not garner [Appellant] PCRA relief[,]" as the court did not find Clark's confession credible, which "defeats the ultimate issue of [Appellant's] entitlement to PCRA relief." *Id.* Attorney Dougherty verifies in his petition to withdraw that he has sent his no-merit letter to Appellant, and he provides proof that he informed Appellant of his right to hire new counsel or proceed *pro se*. Appellant filed a *pro se* response on July 7, 2020, essentially claiming that the PCRA court's credibility determination was belied by the record. Accordingly, Attorney Dougherty has satisfied the first four requirements for withdrawal under **Turner/Finley**.

In regard to the fifth and sixth requirements for withdrawal, we have conducted our own independent assessment of the record to determine if the issues Appellant seeks to raise herein are meritless. As part of this review, we have examined the certified record, Attorney Dougherty's no-merit letter, the Commonwealth's brief, Appellant's *pro se* response, and the applicable case law. We have also considered the December 26, 2019 opinion by the Honorable Jeffrey D. Wright of the Court of Common Pleas of Lancaster County. For the reasons set forth by Judge Wright, we agree that Appellant has failed to demonstrate that he could not have discovered Clark's confession earlier, had he exercised due diligence. Alternatively, Judge Wright found that

- 5 -

Clark's confession was incredible and, contrary to Appellant's *pro se* response, the record supports that determination.[2] Therefore, we are bound by it. ***See Commonwealth v. Abu-Jamal***, 720 A.2d 79, 99 (Pa. 1998) ("Just as with any other credibility determination, where the record supports the PCRA court's credibility determinations, those determinations are binding on [an appellate c]ourt."). Consequently, even if Appellant's petition had been timely filed, we would discern no error in the court's decision to deny him post-conviction relief. Therefore, we affirm the order denying Appellant's petition for the reasons set forth by Judge Wright in his December 26, 2019 opinion, and grant Attorney Dougherty's petition to withdraw.

Order affirmed. Petition to withdraw granted.

---

[2] In Appellant's *pro se* response to the ***Turner/Finley*** no-merit letter, he provides cursory objections to the court's basis for finding Clark incredible that are confusing and not supported by citations to the record. Additionally, he seems to focus on alleged discrepancies regarding trivial matters that were not vital to the court's credibility decision. To the extent Appellant also impliedly challenges the court's timeliness assessment, he seems to argue that the court utilized dates in 2017 when it should have used dates from 2016 in discerning when he could have first discovered Clark's confession. Clearly, using the earlier dates proposed by Appellant only ***bolsters*** the court's conclusion that he did not exercise due diligence in discovering and/or presenting the new evidence of Clark's confession. Accordingly, Appellant's response does not demonstrate any error in the court's decision to deny his petition.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/02/2020

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
C R I M I N A L

COMMONWEALTH OF PENNSYLVANIA            :
                                                                :
vs.                                                             :            4052-2003
                                                                :
KALVIN M. MCCULLOUGH                        :

## O P I N I O N

BY: WRIGHT, J.                                                    December 26, 2019

This Opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of

Appellate Procedure. Defendant, Kalvin M. McCullough, appeals my September 12,

2019 Order dismissing his seventh Post-Conviction Relief Act ("PCRA") petition filed on

May 29, 2018. Defendant makes two claims regarding his PCRA Petition. First, that it

was timely filed within a year of discovering after acquired exculpatory evidence.

Second, that I erred in finding the evidence presented at the PCRA Hearing as lacking

in credibility. As these issues have no merit, Defendant's appeal should be denied.

## B A C K G R O U N D

In the early morning hours of July 27, 2003, a group of five Thaddeus Stevens

College students decided to head off campus and walk to a friend's house in the city of

Lancaster. (Transcript, Jury Trial, August 30, 2004 at 37-39)(hereinafter "Jury Trial").

When the students arrived on the first block of Howard Avenue, they encountered the

Defendant and an unknown individual who began interrogating them about their

identities and involvement in a recent altercation, claiming one of the students "snuck"

the Defendant.[1] (Id. at 73-75). After a brief interaction, Defendant accused the students

---

[1] "Snuck" in this instance means to sucker punch someone, or punch someone without provocation.

of lying, gave them three seconds to run, pulled a gun from his waistband, and fired a shot in the air. (Id. at 75-76). Shortly thereafter, Defendant started shooting at the five students as they attempted to flee the unprovoked confrontation. (Id. at 47-50). Four of the five students were able to escape the hail of bullets physically unscathed.

Unfortunately, the fifth student, Joseph Rodgers, was not so lucky and was struck by a bullet in his back. (Id. at 50-51). Mr. Rodgers was transported to Lancaster General Hospital, where he underwent emergency surgery during which several bullet fragments were pulled from his spine. (Id.) Despite this emergency care, at eighteen years old, Mr. Rodgers, a former student athlete, suffered debilitating injuries which rendered him a paraplegic and will confine him to a wheelchair for the remainder of his life. (Id. at 52).

Defendant was subsequently charged with four counts of Criminal Attempt – Homicide[2], four counts of Aggravated Assault[3], and one count Criminal Conspiracy – Aggravated Assault.[4] A jury trial was held on August 30, 2004, and Defendant was found guilty on all counts. After a pre-sentence investigation report, The Honorable Michael A. Georgelis sentenced Defendant on October 15, 2004 to an aggregate sentence of thirty eight (38) to seventy six (76) years in a state correctional institution.[5] An appeal and six prior PCRA petitions followed the sentence.

The Petition sub judice was filed on May 29, 2018 and purported to invoke one of the narrow exceptions to the timeliness requirement of the PCRA, claiming that Defendant had discovered after acquired evidence unknown at the time of trial in the

---

[2] 18 Pa.C.S.A. § 901(a)
[3] 18 PS § 2702(A)(1)
[4] 18 PS § 903(A)(1)
[5] President Judge Georgelis has since retired and the case was reassigned to the undersigned.

form of an alleged confession from an individual by the name of Lamar Clark. On February 15, 2019, I held a PCRA Hearing to determine the timeliness of the filing of the petition and to evaluate the credibility of the "confession" offered by Mr. Clark.

At the PCRA Hearing, Mr. Clark and Defendant testified on behalf of the Defendant. The Commonwealth also called witnesses to describe their investigation into this issue and to authenticate messages transmitted through the prison's messaging systems.[6]

The evidentiary hearing centered on an affidavit from Mr. Clark in which he claimed that he, and not the Defendant, was the shooter. (PCRA Petition, Exhibit 1). As such, Mr. Clark was questioned extensively on details relating to the shooting. (N.T. Evidentiary Hearing, February 15, 2017, at 11-13, 18-20)(hereinafter "Hearing"). On the issue of the events, Mr. Clark claimed the shooting was triggered because of an altercation caused by a group of individuals that "snuck" him on a front porch, although he could not remember the timeline from the altercation to the night of the shooting.[7] (Id. at 11-12). Mr. Clark also claimed to have two individuals[8] with him when he allegedly shot at this group of students, which directly contradicts testimony of the three victims that testified at the jury trial in 2004.[9] (Id. at 22).

The most telling portion of Mr. Clark's testimony was his lack of memory about specific details of any portion of the shooting. He could not recall what type of gun was

---

[6] Lieutenant Joyce Rose, Detective William Chalfant, Detective Charles Stevens, and Detective Andrew Morgan testified to their investigations of Defendant, Lamar Clark, and the various parties involved in this scheme, which included the interception of electronic messages and recorded telephone calls.

[7] He could not remember if it was "the next day or sometime that week or whatever it was." (Hearing at 11-12).

[8] One individual was a deceased cousin and the other was one of his cousin's "little buddies" only identified as "Jay." (Id. at 22). Both individuals were unavailable to corroborate Mr. Clark's version of events.

[9] The victims that testified in the 2004 jury trial were Zane Brown, Dashawn Harrison, and the shooting victim, Joseph Rodgers. Two others did not testify. All the victims' stated that two individuals approached them, not three. (N.T. Jury Trial, August 30, 2004 at 35, 66, and 97).

3

used other than it was a revolver, and he could not even say whether it was a big or small gun. (Id. at 18, 38). He could not say how many shots he fired, or even estimate whether it was six or more than six shots fired. (Id. at 19, 40). When asked what happened to the gun he used, his first response was he gave it to a friend. (Id. at 20). Upon further questioning, Mr. Clark then said he gave it to a nameless person on the street before retracting that to state he sold it to someone but could not give a name or sale price. (Id. at 39-40). Lastly, Mr. Clark admitted to reading about the events in the newspaper and referred to the victim as Aaron Rodgers.[10] (Id. at 19, 37-38).

Aside from the actual contents of the affidavit, the timing of the discovery of Mr. Clark's identity was at issue. At the time of the investigation, Mr. Barry Stumpf[11] gave a statement to the police that "Mar-Mar" was the shooter, according to the "word on the street." (PCRA Petition, Exhibit "2", Police Report). At the evidentiary hearing, Defendant stated that he heard this "rumor" and the name "Mar-Mar" from inmates when he transferred to SCI Dallas in January or February of 2017. (Hearing at 60). He also claimed it was about this time that he learned for the first time that "Mar-Mar" was Lamar Clark. (Id.)

While Defendant eventually acknowledged that he had known Mr. Clark virtually his whole life and, in fact, had dated Mr. Clark's sister, he insisted he knew him only as

---

[10] After Mr. Clark admitted he read newspaper stories about the shooting he tried to deny that later in his testimony. (Hearing at 37-38).
[11] This was Defendant's boxing coach, who claimed to have a close, personal relationship with Defendant and described it as a father/son relationship. (Jury Trial at 269).

4

"Little Marey." (Id. at 41-42). Mr. Clark, on the other hand, testified that he had gone by the nickname "Mar" or "Mar-Mar" his entire life. (Id. at 11).[12]

The details of how this affidavit came about, while initially murky, were later clarified to be the result of communications between Defendant, Mr. Clark, a Cornelius Bryant, and a "Jessica Mysteria."[13] In a message sent on April 22, 2017, Defendant asked Ms. "Mysteria": "I need you to look up somebody named Mar-Mar, real name Lamar M. Clack [sic],[14] MQ4141[15]... Tell him I need an affidavit from him... the statute is up for him." (Id. at 84). On April 28, Ms. "Mysteria" confirmed she e-mailed Mr. Clark, per Defendant's instructions. (Id. at 85).

Subsequently, Cornelius Bryant, also known as "Neil," corresponded with both Defendant and Mr. Clark prior to the receipt of the affidavit.[16] (Id. at 86, 88). One message on October 30, 2017 from "Neil" to Defendant stated, "...explain to me about your situation with being time barred again... Let me know ASAP and I'll holla at Mar-Mar tonight to see what he says." (Id. at 88). A later message from "Neil" to Mr. Clark stated, "He (Defendant) said he found a crazy loophole but he needs your help in order for him to succeed." (Id.) A number of additional messages relating to Mr. Clark agreeing to the plan were sent, messages which Defendant claimed he did not receive because he was "in the hole" at SCI Dallas. (Id. at 53-54).

---

[12] Interestingly enough, despite Defendant's claim to have known Mr. Clark only as "Little Marey" until recently, he used the name "Mar-Mar" with ease about twenty times in total throughout his testimony when referring to Mr. Clark and never once referred to him as "Little Marey." (Id. at 41-68).

[13] "Jessica Mysteria" was an account on the prison e-mail system who was revealed to be Defendant's ex-girlfriend Jessica Lopez. (Hearing at 44-46).

[14] A later message corrected the misspelling of Mr. Clark's last name. (Id. at 84)

[15] This is Mr. Clark's inmate number. (Id.)

[16] "Neil" used the account of an "Anthony Patterson" to correspond to both Defendant and Mr. Clark using the prison e-mail system. (Id. at 87-88).

5

Throughout the hearing, Mr. Clark's testimony was shifting, evasive, and vague . Not only could he not remember details about the events or the victim, he would admit a fact and then later recant that fact.[17] (Id. at 25-26, 31-32). Also, I took judicial notice of Mr. Clark's criminal history pursuant to rules 201 and 609(A) of the Pennsylvania Rules of Evidence. (Id. at 95). On Docket No. 4865-08, Mr. Clark was convicted of identity theft and false identification to law enforcement on April 17, 2019, which was within the ten-year window. (Id.) On Docket No. 4864-08, Mr. Clark was convicted for false reports to law enforcement authorities with the same conviction date as the prior docket squarely within the ten-year window. (Id.)

Other portions of Defendant's testimony were also of some interest. At the jury trial, Defendant's boxing coach, Mr. Stumpf, testified as an alibi witness and placed Defendant's whereabouts with him in Philadelphia watching a boxing match. (Jury Trial at 259-261). At the PCRA Hearing, Defendant claimed that he was "all over Lancaster" that night, including at a party thrown by an individual identified only as "Anwar."[18] (Hearing at 54). He then modified that statement to claim that the the party was actually over and they were watching a fight. (Id. at 54). When pressed on the issue, Defendant actually admitted to being "at Mar-Mar's party" before correcting himself and again stating he was at Anwar's party. (Id. at 55).

Based on these facts ascertained at the PCRA Hearing through testimony and documentary evidence, I found first that Defendant's PCRA Petition was time barred

[17] Mr. Clark first admits to knowing Cornelius Bryant as Neil writing under Anthony Patterson's account, then tries to say he does not know any of this. (Id. at 25-26, 31-32). In fact, Mr. Clark and Mr. Bryant were housed on the same block and Mr. Clark admitted to knowing Mr. Bryant "pretty well." (Commonwealth's Exhibit 3, Id. at 26).
[18] In the e-mail exchange, there was also a request from Defendant to Ms. Lopez asking her to obtain an affidavit from Anwar stating Defendant was at the party, and he "wouldn't put him (Anwar) under a bus or anything." (Commonwealth's Exhibit 1, #6).

6

and therefore I was without jurisdiction to hear its merits. Even if the matter had not been time barred, I found the testimony of both Mr. Clark and Defendant to be evasive, vague, inconsistent, and wholly incredible, if not perjurious. As such, I dismissed Defendant's PCRA by Order on September 12, 2019. He proceeded to file this timely Appeal to that Order and the Commonwealth responded in turn. As the Appeal is without merit, it should be denied for the following reasons.

## DISCUSSION

Defendant makes two claims on appeal: (1) the PCRA Petition was timely filed within the one-year limit after the discovery of after acquired evidence; and (2) I erred in finding Defendant's evidence void of credibility. (Def. Concise Statement of Matters Complained of on Appeal, October 30, 2019)(hereinafter "Def. Errors on Appeal"). I shall discuss each in turn.

### Timeliness

Generally, a petition filed pursuant to the PCRA, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final . . . ." 42 Pa.C.S.A. § 9545(b)(1). Judgment becomes final at the conclusion of direct review, or at the expiration of time for seeking the review. *Id.* §9545(b)(3).

It is also "well-settled that the PCRA's time restrictions are jurisdictional in nature." *Commonwealth v. Robinson,* 139 A.3d 178, 185 (Pa. 2016) (citations omitted). "As such, this statutory time-bar implicates the court's very power to adjudicate a controversy and prohibits a court from extending filing periods except as the statute permits. . . . *Id.* Accordingly, "the time for filing a PCRA petition can be extended only by

7

operation of one of the statutorily enumerated exceptions to the PCRA time-bar." *Id.*

(citations omitted). Those exceptions consist of the following:

(i) The failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) The facts upon which the claim is predicated were unknown to the Defendant and could not have been ascertained by the exercise of due diligence; or

(iii) The right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). It is the Defendant's burden to plead and prove that

one of these timeliness exceptions applies. *Commonwealth v. Beasley*, 741 A.2d 1258,

1261 (Pa. 1999) (citing 42 Pa.C.S.A. § 9545(b)(1)). Moreover, "[t]hat burden necessarily

entails an acknowledgement by the petitioner that the PCRA petition under review is

untimely but that one or more of the exceptions apply." *Id.* If a Defendant invokes any of

the exceptions, yet another requirement is that the petition is filed within one year from

the date it could be filed. 42 Pa.C.S.A. § 9545(b)(2).

In the instant petition, Defendant invokes the after acquired evidence exception

of 42 Pa.C.S.A. § 9545(b)(1)(ii). By invoking this exception, it is the burden of the

Defendant to plead and prove by a preponderance of the evidence that the after

acquired evidence could not have been uncovered using due diligence before trial, it is

not merely cumulative, it does not go to impeaching the credibility of evidence produced

at trial, and the evidence would likely compel a change in verdict. *Commonwealth v.*

*D'Amato*, 586 A.2d 806, 823 (Pa. 2004).

8

It is undisputed that Defendant's seventh PCRA Petition falls well outside of the original one-year limitation, as his sentence became final on March 14, 2006.[19] Defendant now relies on the after acquired evidence exception to trigger a new one year period in which to file his seventh PCRA Petition. It is also undisputed that the evidence Defendant proffered is not cumulative, it is not being used to impeach trial testimony, and it would likely result in a different outcome, which satisfied three of the four elements outlined in *D'Amato*. The two issues of timeliness of the petition are whether or not Defendant exercised due diligence in uncovering the evidence and at which point the after acquired evidence became known to the Defendant.

At the PCRA Hearing, Defendant explained "Mar-Mar" was brought up when he was transferred to SCI Dallas in January or February of 2017. (Hearing at 60-61). He was told by several other inmates that "Mar-Mar" had confessed to others about committing the shooting. (Hearing at 60-61). Defendant knew the name because Mr. Stumpf made comments to the police about "Mar-Mar" being the shooter during the initial investigation. (Id. at 62).

Giving Defendant the benefit of every doubt, what this establishes is that, *at the latest*, by February 2017 he had acquired the evidence necessary to trigger the one-year filing period. Accordingly, his Petition filed May 2018 was untimely.

Defendant argues that these statements made by Mr. Stumpf and the inmates at SCI Dallas are inadmissible hearsay and, therefore, do not trigger the commencement of the filing period. (Brief in Support of Petitioner's Amended PCRA at 3)(hereinafter

---

[19] Defendant was sentenced on October 15, 2004. His appeal was dismissed by the Superior Court on January 25, 2005 and again on March 14, 2005. Therefore, his right to petition expired and the sentence became final.

9

"Brief"). Defendant further argues that after hearing the rumors at SCI Dallas, it prompted him to begin an investigation into the identity of "Mar-Mar," which was the missing fact and the key to after discovered evidence in the case at hand. (Id. at 4). Defendant explains the delay between learning the identity of Mr. Clark and the date of the affidavit was caused by his stay in a disciplinary unit at his assigned SCI which made him unable to correspond on the e-mail messaging system. In short, the Defendant views the date of the affidavit as the controlling date for the after acquired evidence exception to begin tolling. This Court disagrees.

Claims based on inadmissible hearsay do not implicate the tolling of the after acquired evidence exception. *Commonwealth v. Yarris*, 731 A.2d 581, 592 (1999). "A petitioner fails to meet his burden when the facts asserted were merely 'unknown' to him." *Commonwealth v. Taylor*, 2007 PA Super 282, ¶ 10, 933 A.2d 1035, 1041 (2007)(citing *Commonwealth v. Chester*, 895 A.2d 520, 523 (2006)). Petitioner must also explain why the asserted facts could not have been discovered earlier by using due diligence to uncover them. *Commonwealth v. Breakiron*, 566 Pa. 323, 331, 781 A.2d 94, 98 (2001).

While the statements made by Mr. Stumpf and the inmates at SCI Dallas regarding the rumor of "Mar-Mar" being the shooter may be inadmissible hearsay, the issue is not hearsay but rather due diligence, or the lack thereof. Defendant fails to explain why a jailhouse rumor in 2017 triggered an investigation when, by Defendant's own admission, the same rumor existed in 2003. Defendant fails to explain why he gives inmate chatter greater credibility than a boxing coach with whom he shared an almost paternal relationship. Defendant's only explanation of the lack of due diligence is

10

he was "in the hole" and could not correspond in order to get the affidavit.[20] Defendant failed to exercise due diligence and subsequently fails to meet his burden of proving the after acquired evidence exception.

Assuming Defendant did exercise some amount of due diligence as he argues, Defendant's argument as to the controlling date of the discovery of information remains fatally flawed. Defendant argues that whether or not the true shooter would actually confess holds bearing on the acquisition of evidence, so the date of the affidavit should be the controlling date. The outstanding fact allegedly "acquired" by the Defendant was the true identity and legal name of "Mar-Mar," the alleged shooter. Defendant claims the identity of "Mar-Mar" was unknown to him until he "learned" it was Lamar Clark, evidenced by the April 22, 2017 e-mail to "Jessica Mysteria" asking her to look up the individual by that name. (Commonwealth's Exhibit 1, #2). As noted previously, I consider the triggering event to be even earlier, specifically January or February 2017 when he admits to first learning about "Mar-Mar" when he was transferred to SCI Dallas. (Hearing at 44). All that Defendant's e-mail to Jessica "Mysteria" in April 2017 demonstrates that he had firm knowledge of the identity of "Mar-Mar" at that time. Regardless of whether you use the January or February 2017 dates, or the April 22, 2017 date, Defendant failed to file a petition until May 29, 2018, over a year past any of those dates. Defendant's Petition was untimely and, therefore, properly dismissed.

---

[20] Defendant was "in the hole" from November 2, 2017 until February 3, 2018, but he learned of "Mar-Mar's" identity prior to that period in January or February of 2017. (Hearing at 63).

11

### Credibility

Assuming, *in arguendo*, that Defendant's Petition was timely filed, it was still properly denied because the supporting evidence had no credibility.

When a trial court is faced with recantation evidence in a PCRA, they must hold an evidentiary hearing to determine the credibility of such evidence. *Commonwealth v. Small*, 189 A.3d 961 (Pa. 2018). As the Pennsylvania Supreme Court stated in *Williams*, "...the PCRA court as factfinder is in a superior position to make the initial assessment." *Commonwealth v. Williams*, 557 Pa. 207, 233, 732 A.2d 1167, 1181 (Pa. 1999). Unless the post-conviction court is satisfied that the recantation is true, it should deny a new trial based on after-discovered evidence. *Small*, 189 A.3d 961 at 977. A higher court should leave the determinations made at an evidentiary hearing undisturbed unless unsupported by the record. *Id.* at 971.

It is this Court's opinion that Mr. Clark's proffered "admission" is little more than a transparent effort to proffer false testimony in an attempt to free a guilty man. This opinion has ample support in the record.

First, one of the key facts in the instant matter is the identity of "Mar-Mar." Defendant claims that he had no idea who "Mar-Mar" was, and that Lamar Clark was only known to him as "Little Marey." (Hearing at 41-42). Mr. Clark testified, however, that he has been known as "Mar-Mar" since birth. (Id. at 11). Add to that fact Defendant's admission that he and Mr. Clark were childhood friends and that he had dated Mr. Clark's sister, and there is no credibility whatsoever that Defendant did not know who "Mar-Mar" was. (Id. at 41-42). Indeed, Defendant himself said that

12

"Lancaster's a real small city – it's really small,"[21] so it defies logic that a person with such close familial ties with someone in such a small city would not know a nickname by which Clark had been known by since birth.

Furthermore, Mr. Clark's offered testimony was shifting, elusive, inconsistent and vague. He admitted to knowing Cornelius Bryant as "Neil" during one line of questioning. (Hearing at 25). Then a few moments later, he questions the identity of Cornelius Bryant as if he never admitted knowing Cornelius Bryant as "Neil." (Id. at 31). This was all despite the fact that Mr. Clark and Mr. Bryant were incarcerated together in the past. (Commonwealth's Exhibit 3). He admitted to reading the newspaper account of the shooting in 2003, but later denied reading any news stories, got confused about whether or not he read new stories, and could not remember the victim's name. (Id. at 19, 38). He claimed two people were with him at the time of the shooting, which was in complete contradiction to jury trial testimony. (Id. at 22). Conveniently, all parties that could corroborate his version of the events were unavailable. (Id.) Finally, while Mr. Clark could only give vague details of the shooting such as using a revolver, wearing a hoodie, the name of the victims (which he confused)[22], he was utterly unable to give specifics such as the exact type of gun, an estimate to how many shots were fired, or to whom and for how much he sold the gun to after the shooting. (Id. at 39). Coupled with his prior convictions for crimen falsi, Mr. Clark's testimony has no iota of credibility.

Defendant's testimony was also shifting and inconsistent. At the jury trial in 2003, Mr. Stumpf testified that he and Defendant went to Philadelphia to watch a fight and did

---

[21] Hearing at 62.

[22] These details are easily obtainable through online news sourced such as: Justin Quinn, Man Guilty of Shooting at Stevens Students, LancasterOnline, September 15, 2004, available at https://lancasteronline.com/news/ man-guilty-of-shooting -at-stevens-students/article_7970b3f8-4e54-586c-8c8c-f19ac7ec2602.html.

13

not return until after midnight at the time of the shooting, and he gave similar statements to the police. (Jury Trial at 260-261, PCRA Petition, Exhibit "2," Police Report). At the Hearing, Defendant claimed first he was "all over Lancaster," then at a party at "Anwar's," but then claimed that the party was over and they were watching the fight. (Hearing at 54). Defendant then said in his testimony he was at "Mar-Mar's party" before correcting himself to saying Anwar's party. (Id. at 55). One of Defendant's messages to Jessica "Mysteria" asks her to try to obtain an affidavit from Anwar to state that Defendant was at his party. (Commonwealth's Exhibit 1, #6). Defendant's testimony along with Mr. Clarks are wholly unbelievable, as shown in the record.

Lastly, there was an overwhelming amount of evidence presented by the Commonwealth which shows a scheme contrived by Defendant, Mr. Clark, Mr. Bryant, and Jessica Lopez aka Jessica "Mysteria" to perjure evidence. Defendant claims actual innocence in the underlying matter. However, in one of the first messages from "Neil" to Mr. Clark there was mention of a "crazy loop hole" that Defendant needed Mr. Clark's help with to utilize. (Commonwealth's Exhibit 2, #10). Another message from "Neil" to Mr. Clark said, "He wanted me to make sure you knew exactly what he need [sic] your help on and how he needs it." (Id. at #13). Other emails between Defendant and Neil highlight the plan with statements such as, "Explain to me about your situation with being time barred again. I need to know so I can do some research on it myself plus my lady is a law student so she maybe able to help me out as well." (Commonwealth's Exhibit 1, #9).

Actual innocence is not a "crazy loop hole" that is time barred. It is this Court's opinion that Defendant tried to get a childhood friend, Mr. Clark, to take the fall for

14

Defendant's heinous actions in 2003 because the statute of limitations had run for the Commonwealth to successfully prosecute Mr. Clark. Defendant's own words allude to this in his telephone call to "Neil" the night before the PCRA Hearing, saying, "We never gave out the whole facts to any of the case. Everything we said is, yo, can you send an affidavit?" (Hearing at 109). And it was obvious from Mr. Clark's testimony that he did not know the "whole facts" because he did not commit the shooting. It was clear to this Court that this was nothing more than a plot between these actors to try to exculpate a rightfully convicted Defendant from serving the remainder of his sentence.

## Conclusion

The issues Defendant raises are time barred and do not have merit and his appeal should be should dismissed. Accordingly, I enter the following:

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA

C R I M I N A L

COMMONWEALTH OF PENNSYLVANIA      :

     vs.                            :          4052-2003

KALVIN M. MCCULLOUGH          :

**ORDER**

**AND NOW**, this _____ day of December, 2019 the Court hereby submits this

Opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

BY THE COURT:

JEFFERY D. WRIGHT
JUDGE

CLERK OF COURTS
2019 DEC 26 AM 10: 20
LANCASTER COUNTY, PA

COPIES TO:
Gregory Seiders, Assistant District Attorney
Dennis Dougherty, Esq., 53 North Duke Street, Suite 304, Lancaster, PA 17602

16