J-S54010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM HOWARD MARKS | : | |
| | : | |
| Appellant | : | No. 163 MDA 2020 |

Appeal from the PCRA Order Entered December 23, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0003554-1997

BEFORE: NICHOLS, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:                **FILED MARCH 8, 2021**

Appellant William Howard Marks appeals from the order denying his second Post Conviction Relief Act[1] (PCRA) petition.  Appellant contends the PCRA court erred by holding that his recantation witness was not credible without an evidentiary hearing.  We affirm.

We state the facts as set forth by the trial court in its Pa.R.A.P. 1925(b) opinion in response to Appellant's direct appeal:

> In the early morning hours of June 14, 1996, police responded [to a particular address] in the City of Harrisburg.  In the back seat area of a 1977 Pontiac Bonneville, they found the deceased body of Victor Del Rosario (a/k/a "Dominican Manny"), a reputed drug dealer.  Del Rosario's body was duct-taped (wrists, mouth, thighs).  He had been shot twice in the head and then set on fire with gasoline.  Following a lengthy investigation, [Appellant, co-defendant Samuel E. Lester,] and a third party, Stephen Blackstone, were charged in the incident-largely as a result of a

---

[1] 42 Pa.C.S. §§ 9541-9546.

confession given by Blackstone. [Appellant], however, also made several statements, which taken together, were also incriminating.

* * *

On October 21, 1997, [Appellant] was lodged in Dauphin County Prison on unrelated charges (armed robbery). He made contact with Sergeant Corkle, a corrections officer[,] and told him, "I want to talk about a murder I committed." Later that same day, [Appellant] was transported to the office of Deputy District Attorney Michael Rozman who had been assigned to the Del Rosario case. Prior to [Appellant's] arrival, Rozman contacted [Appellant's] counsel of record, Anser Ahmad, and asked him to come to the D.A.'s Office. No conversation with [Appellant] occurred until Attorney Ahmad entered the office. [Appellant] was then given his ***Miranda*** rights by Rozman . . . .

After conferring with counsel, [Appellant] stated that he still wanted to speak with the district attorney. Deputy District Attorney Michael Rozman then stated, "I understand you want to talk about a murder. Which one do you want to talk about?" [Appellant] replied: "The one with Dominican Manny." Rozman rejoined: "You mean the one where the guy was duct-taped, shot and set on fire?" [Appellant] responded: "Yes." Rozman then asked [Appellant] what he had to say. [Appellant] explained that he was there for a deal and would plead to Third-Degree Murder.

Trial Ct. Op., 6/7/99, at 1-3. The Commonwealth agreed to a plea with Appellant for the unrelated armed robbery charges, rejected a plea offer for the Del Rosario homicide, and charged Appellant with homicide. ***Id.*** at 3.

At Appellant's trial, the Commonwealth's "principal witness against [Appellant] and Lester" was Blackstone. ***Id.*** at 8. Blackstone had earlier pled guilty to third-degree murder and "testified to his involvement (lookout and

driver of the getaway car) and the involvement of [Appellant] and Lester."[2] *Id.* A jury convicted Appellant of first degree murder, robbery, arson, and related offenses, and acquitted Lester. *Id.* at 1. The trial court sentenced Appellant to life imprisonment and a consecutive aggregate sentence of thirty-five to seventy years' imprisonment. *Id.*

Appellant appealed, this Court affirmed on October 15, 1999, and our Supreme Court denied Appellant's petition for allowance of appeal on March 21, 2000. *See Commonwealth v. Marks*, 1467 MDA 2001, at 2 (Pa. Super. filed Oct. 7, 2002) (unpublished mem.) (summarizing procedural history). Appellant filed a timely first PCRA petition, which the PCRA court denied, and this Court affirmed. *See id.*

On August 6, 2018, Appellant filed his second *pro se* PCRA petition. Attached to the petition was Blackstone's affidavit, dated July 20, 2018, which recanted his trial testimony. Ex. A. to Appellant's PCRA Pet., 8/6/18. Blackstone stated that he was sent to prison "around May, June or July of 1997" for unrelated robberies. *Id.* at ¶¶ 3, 6. A "month or so later," Blackstone "called home and received some bad news from a relative that [Appellant] harmed [Blackstone's] sister and was sleeping with [Blackstone's]

---

[2] The jury also heard from Sergeant Corkle about Appellant's remark and heard about Appellant's discussion with Attorney Rozman, as summarized above. Appellant requested, and the trial court gave, an accomplice corrupt source instruction.

ex-girlfriend, and [Blackstone] had one of [his] relatives call [the police] to let them know that [he] want[ed] to talk." *Id.* at ¶ 6. Blackstone stated that he spoke with the police and the district attorney, and the district attorney "promised that if [Blackstone] told them the information they wanted, that [Blackstone] would receive" a lesser sentence. *Id.* at ¶ 7. Blackstone asserted that he then lied to the district attorney by incriminating Appellant. *Id.* at ¶ 8.[3] Blackstone claimed he lied in order "to avoid doing a long time in prison" and to get revenge against Appellant. *Id.*

Appellant's privately-retained counsel entered his appearance and filed an amended PCRA petition on January 14, 2019. On June 25, 2019, the Commonwealth filed a response, highlighting contradictions in Blackstone's affidavit. For example, the Commonwealth attached to its response Dauphin County prison records, which established that Appellant was in prison between March and October 1997, when Appellant purportedly harmed Blackstone's sister. Commonwealth's Resp. to Appellant's PCRA Pet., 6/25/19, at ¶ 3 & Exs. The Commonwealth also attached the probable cause affidavit for Appellant's arrest, which stated that "on January 23, 1997," Blackstone gave a police statement incriminating Appellant, which contradicted Blackstone's contention that he incriminated Appellant in mid-1997. *Id.*

---

[3] Without quoting the entire paragraph, Blackstone essentially recanted his trial testimony inculpating Appellant.

On November 26, 2019, the PCRA court issued a Pa.R.Crim.P. 907 notice, which concluded Blackstone's affidavit was not credible due to the above contradictions and questioned why Blackstone would implicate himself in a murder in order to get revenge against Appellant. Rule 907 Notice, 11/26/19, at 5-7 (unpaginated).[4] Appellant filed a response to the Rule 907 Notice on December 17, 2019, which was one day past the twenty-day deadline. No party objected to Appellant's late response, however. On December 23, 2019, the PCRA court formally dismissed Appellant's PCRA petition in an order that acknowledged Appellant's Rule 907 response. Order, 12/23/19.

Appellant timely appealed, and on January 31, 2020, the PCRA court ordered Appellant to file a Pa.R.A.P. 1925(b) statement within twenty-one days. Appellant filed an untimely Rule 1925(b) statement on Monday, February 24, 2020.[5] The PCRA court filed a Rule 1925(a) opinion, which incorporated by reference its Rule 907 Notice. PCRA Ct. Op., 3/24/20, at 3, 5.

_____

[4] The PCRA court held that the instant PCRA petition was timely. Rule 907 Notice at 3.

[5] If a Rule 1925(b) statement in a criminal matter was untimely filed, "this Court may decide the appeal on the merits if the [PCRA] court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal." **Commonwealth v. Burton**, 973 A.2d 428, 433 (Pa. Super. 2009). Because the PCRA court filed a responsive Rule 1925(a) opinion, we decline to remand. **See id.**; **see also** Pa.R.A.P. 1925(c)(3).

Appellant raises one issue:

Did the PCRA court, which did not preside at trial, err by dismissing Appellant's timely claim of recantation by [Blackstone] without an evidentiary hearing and on credibility grounds?

Appellant's Brief at 5.

Appellant contends that the PCRA court erred by denying his petition based on credibility without holding an evidentiary hearing. *Id.* at 11. He claims that the PCRA court failed to identify the inconsistencies within Blackstone's affidavit. *Id.* Appellant argues that even if Blackstone's recantation was dubious, the PCRA court should still have held an evidentiary hearing. *Id.* at 12-13. Appellant notes that the PCRA judge did not preside over Appellant's trial, and therefore the PCRA court abused its discretion by dismissing his petition without a hearing. *Id.* at 15.

Our standard of review follows:

[O]ur standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citations omitted and formatting altered), *appeal denied*, 216 A.3d 1029 (Pa. 2019).

In *Commonwealth v. Williams*, 732 A.2d 1167 (Pa. 1999), our Supreme Court addressed whether the PCRA court erred by rejecting an

affidavit from a witness, Holly Boone, recanting her trial testimony. *Williams*, 732 A.2d at 1179. In *Williams*, the PCRA court primarily rejected Boone's recantation testimony because of "the axiom that recantation testimony inherently embodies a diminished degree of reliability." *Id.* at 1179-80. The PCRA court also reasoned that even if Boone's testimony was false, the Commonwealth's case included two other eyewitnesses and corroborative physical evidence. *Id.* at 1180. The *Williams* Court reasoned as follows:

> While this Court has often acknowledged the limitations inherent in recantation testimony, we have not foreclosed the possibility that, in some instances, such testimony may be believed by the factfinder and thus form a basis for relief. For this to occur, however, the testimony must be such that it could not have been obtained at the time of trial by reasonable diligence; must not be merely corroborative or cumulative; cannot be directed solely to impeachment; and must be such that it would likely compel a different outcome of the trial. In addition, an appellate court may not interfere with the denial or granting of a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion.

*Id.* (citations omitted and formatting altered).

The *Williams* Court held that it would not "preclude the possibility that a credibility-based dismissal of a petitioner's claims involving recantation might be appropriate under some set of circumstances without the necessity of an evidentiary hearing." *Id.* The *Williams* Court, however, took issue with the PCRA court's adoption of the Commonwealth's reasoning, which "recited boilerplate principles concerning the inherent limitations of recantation testimony—[the PCRA court's decision] did not contain any particularized finding [by the PCRA court] as to the actual credibility of Ms. Boone's

prospective testimony as reflected in her declaration." *Id.* The *Williams* Court held there was nothing to suggest "that the PCRA court actually considered Ms. Boone's recantation in light of the trial record of her testimony and her post-trial declaration" and therefore the PCRA court "abused its discretion [by] not only . . . failing to make an independent credibility determination, but also [by] . . . adopting reasons in support of its decision that were insufficient on their face." *Id.* at 1180-81.

Subsequently, in *Commonwealth v. Washington*, 927 A.2d 586 (Pa. 2007), our Supreme Court affirmed the PCRA court's denial of relief without an evidentiary hearing. *Washington*, 927 A.2d at 591. In *Washington*, the petitioner and his co-defendant were convicted of murder, specifically shooting one of the robbery victims. *Id.* at 592 & 592 n.2. The co-defendant gave a statement that although he carried a gun, it was not functional and, therefore, he did not fire the fatal shot. *Id.* at 596. Several years later, the co-defendant drafted a declaration confessing that "he, not [the petitioner], fired the fatal shot; that he lied about [the petitioner] being the shooter to avoid the death penalty . . . ." *Id.* The PCRA court analyzed the co-defendant's confession and, among other items, held that it "was not persuasive evidence of innocence, implicitly finding that [the co-defendant's] affidavit was not credible." *Id.* at 597 (footnote omitted). The *Washington* Court affirmed, concluding that "the PCRA [court], as fact-finder, having assessed the credibility of [the co-defendant's] confession and its significance

in light of the trial record, properly denied" the petitioner relief. *Id.* Our Supreme Court noted that the PCRA court properly assessed the credibility of the declaration unlike the PCRA court in *Williams*, which had failed to make an independent credibility determination. *Id.*

After careful consideration of the record, the parties' briefs, and the PCRA court's opinion, we agree with the PCRA court that an evidentiary hearing was not required because of the contradictions in Blackstone's affidavit. *See* PCRA Ct. Op. at 3, 5 (incorporating by reference the reasoning set forth in its Rule 907 Notice); Rule 907 Notice at 5-8. Like the PCRA court in *Washington*, and unlike the PCRA court in *Williams*, the instant PCRA court presented particularized, independent findings of Blackstone's lack of credibility based on the contradictions in his affidavit. *Compare Washington*, 927 A.2d at 597, *with Williams*, 732 A.2d at 1180. For example, prison records established Appellant was in prison when Blackstone claimed he learned Appellant had harmed Blackstone's sister and slept with Blackstone's ex-girlfriend. *See* Rule 907 Notice at 6. For these reasons, Appellant failed to establish a clear abuse of discretion by the PCRA court. *See Washington*, 927 A.2d at 591; *Sandusky*, 203 A.3d at 1043.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/08/2021